## DARIYON DRAKE ET AL. *v.* ANNE S.
## BINGHAM ET AL.
### (AC 30265)

DiPentima, C. J., and Beach and Borden, Js.

702

Argued February 17—officially released September 27, 2011

*Kathleen L. Nastri*, with whom was *Cynthia C. Bott*, for the appellants (plaintiffs).

*David J. Robertson*, with whom, on the brief, were *Madonna A. Sacco*, *Rachel E. Katz* and *Jeremy P. Chen*, for the appellees (defendants).

*Opinion*

BEACH, J. In this medical malpractice action, the plaintiffs, Lashekas White, individually and on behalf of her minor son Dariyon Drake,[1] appeal from the judgment rendered, following a jury trial, in favor of the defendant Anne S. Bingham, a board certified obstetrician and gynecologist.[2] On appeal, the plaintiff claims that the court (1) abused its discretion by admitting evidence of Drake's missed physical therapy appointments, (2) erred by instructing the jury in any fashion regarding the doctrine of mitigation of damages and (3) erroneously charged the jury with a legally incorrect instruction regarding mitigation of damages. We agree with the plaintiff's third claim[3] and, accordingly, reverse the judgment of the trial court.[4]

---

[1] Prior to the completion of trial, Darryl Drake, the father of the child, withdrew his claims. Hereafter, Lashekas White will be referred to in this opinion as the plaintiff and Dariyon Drake will be referred to by name.

[2] The other defendants named in this action were Crescent Street Obstetrics & Gynecology, LLC, and Middlesex Memorial Hospital. Crescent Street Obstetrics & Gynecology, LLC, did not participate in this appeal and the action was withdrawn as to Middlesex Memorial Hospital. For convenience, we refer to Bingham as the defendant.

[3] Although we reverse the judgment of the court pursuant to the plaintiff's third claim, we discuss her first two claims because they are likely to recur on retrial. *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 259–60, 9 A.3d 364 (2010).

[4] The plaintiff also claims that the court abused its discretion by (1) denying her motion for a mistrial concerning improper courtroom conduct, (2) denying her motion for a mistrial concerning defense counsel's introduction of certain unfairly prejudicial issues, (3) allowing defense counsel to question an expert witness regarding irrelevant and unduly prejudicial issues and (4) precluding an expert witness from proffering certain testimony. Because we reverse the judgment of the trial court based on the plaintiff's instructional claim, we need not address these claims, which are not likely to arise in a new trial.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of this appeal. Drake was delivered by the defendant at Middlesex Hospital on August 23, 2003. During the delivery, the defendant encountered a shoulder dystocia.[5] Having recognized that a shoulder dystocia had occurred, the defendant employed several techniques in an attempt to address it.[6] After the techniques failed to remedy the shoulder dystocia, the defendant reached behind Drake's head and rotated his body approximately thirty to forty-five degrees and pulled him out to complete the delivery.

Following Drake's delivery, it became apparent that his right arm did not have average mobility and was not functioning properly. The plaintiff took Drake to see Kevin Felice, a neurologist at the University of Connecticut Health Center. Felice conducted a series of tests that revealed that Drake had suffered an injury to the nerves of his brachial plexus.[7] Drake was then taken to Boston Children's Hospital to undergo a surgical procedure by Peter Waters, an orthopedic surgeon. Waters determined that Drake had sustained multiple

---

[5] Shoulder dystocia is an abnormal birthing situation in which the delivery is obstructed because the baby's shoulder becomes stuck against the mother's pubic bone, causing the forward motion of the baby to stop. In this case, Drake's head was delivered but his right shoulder was stuck against the plaintiff's pubic bone.

[6] The first technique that the defendant employed was the McRoberts maneuver, in which the plaintiff's thighs were rolled back against her abdomen. The defendant next employed suprapubic pressure, in which she put her fist on the plaintiff's stomach directly above her pubic bone and applied downward pressure.

[7] The brachial plexus is a network of nerves associated with the arm that emerge from the cervical spine. Daniel Adler, one of the plaintiff's expert witnesses, described the brachial plexus as follows: "The nerves leave the neck. They merge with other nerves. They create more nerves as those nerves descend into the arm and they go to various muscles within the arm and cause them to move. They also go to various parts of the skin and permit you to feel things."

avulsions.[8] As a result of the avulsions, scarring formed in the area of Drake's nerve injuries and caused the corresponding muscles to become very weak.

On May 5, 2008, the plaintiff filed the operative complaint alleging, inter alia, that Drake's brachial plexus injuries were the result of the defendant's "excessive traction, pressure, and/or torsion on [Drake] following the recognition of the shoulder dystocia . . . ." The trial commenced on May 6, 2008. The plaintiff contended that Drake sustained the injury to his brachial plexus as a result of the defendant's use of excessive force during the delivery. The defendant argued, however, that she used an appropriate amount of force in delivering Drake and that his injuries were caused by factors unrelated to labor and delivery. On May 29, 2008, the jury returned a verdict in favor of the defendant. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the court abused its discretion by admitting evidence of Drake's missed physical therapy appointments. Specifically, the plaintiff argues that such evidence was irrelevant, and that any possible relevance was outweighed by its unfairly prejudicial effect.[9] We disagree.

The following additional facts are necessary to address the plaintiff's claim. Prior to the start of trial,

___

[8] An avulsion is the pulling of a nerve from the spinal column. Here, Drake's fifth, sixth and seventh cervical nerves were torn.

[9] The issue of mitigation of damages ordinarily affects only the amount of damages awarded and, thus, ordinarily would not be considered where, as here, the jury finds in favor of the defendant on the issue of liability: any error would be harmless. *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 402, 3 A.3d 892 (2010) ("when a jury does not reach an issue in returning a verdict, alleged improprieties relating to that issue are harmless"). Here, however, because the instruction implicated the jury's decisions regarding causation and the effect of the defense as well, we consider the issue.

the plaintiff filed a motion in limine seeking to preclude the defendant from offering any evidence concerning Drake's failure to attend certain physical therapy appointments. The plaintiff argued that evidence of the missed physical therapy appointments was irrelevant because "there is no testimony . . . linking any missed appointments to . . . any failure of [Drake's] injury to progress . . . ." The plaintiff further argued that evidence of such missed appointments would be unfairly prejudicial because it would bias the jury against her. The defendant contended, however, that such evidence was relevant to mitigate damages and was not unfairly prejudicial. The court agreed with the defendant and denied the motion.

In the course of the plaintiff's testimony on direct examination, her counsel presented her with a note written by Constance Hunter, Drake's therapist, which stated: "[Drake] is discharged from occupational therapy at this time due to lack of parent follow up with scheduled visits[10] and nonresponse to written communication." When the plaintiff's counsel asked her why she did not bring Drake to the scheduled visits, she responded that she "didn't have the transportation to go to take him."

On May 21, 2008, the plaintiff's counsel offered the videotaped trial deposition of David A. Feingold, a treating physician. The plaintiff's counsel asked Feingold to opine as to "the significance of the [plaintiff's] failures to . . . have followed through on all of the recommendations for physical therapy." Feingold opined that "more compliance [with physical therapy] is better and I would not have signed off or recommended the rehab I did without the hope that it would be attended."

On May 7, 2008, the plaintiff's counsel offered Daniel Adler, a pediatric neurologist, as a witness. During

[10] The record reveals that Drake attended only six of eleven scheduled physical therapy appointments.

defense counsel's cross-examination of Adler, the following colloquy took place:

"Q. And the purpose of that physical therapy is to stretch and reduce the contractures, correct?

"A. Correct.

"Q. And strengthen those muscles that can be strengthened, correct?

"A. Correct.

"Q. And that puts the arm in better balance, correct?

"A. Correct.

"Q. And that makes the patient get better, correct?

"A. Correct.

"Q. So that a patient's failure to participate in that kind of therapy could impede the ability to get better, correct?

"A. Correct.

＊ ＊ ＊

"A. Yes. Patients should participate in physical therapy.

"Q. It's a good idea to do that, correct?

"A. Yes.

"Q. Because it might make them better, correct?

"A. Correct.

"Q. Because we all know that nerves can regenerate, correct?

"A. Correct."

Also, when Adler was asked whether he had an opinion, to a reasonable degree of medical probability, regarding whether or not the failure to obtain physical

therapies and the failure to attend medical appointments made a substantial difference in the outcome for Drake, he responded: "I think he'd be better with more therapy, but not to the degree that his arm would be much different than it is today."

We begin our analysis by setting forth our standard of review and relevant legal principles. "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Buchanan* v. *Moreno*, 117 Conn. App. 732, 734, 980 A.2d 358 (2009).

"Evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. Conn. Code Evid. § 4-1. Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree . . . ." (Internal quotation marks omitted.) *State* v. *Gupta*, 297 Conn. 211, 238, 998 A.2d 1085 (2010).

The plaintiff claims that evidence of Drake's missed therapy appointments was irrelevant because the defendant did not proffer any evidence tending to show that the missed appointments "caused or aggravated

[Drake's] substantial permanent injuries." The plaintiff's contention is not supported by the record. As illustrated previously, the defendant's cross-examination of Adler on May 7, 2008, tended to show that the missed physical therapy appointments may have caused a degree of aggravation to Drake's injuries. Furthermore, both Adler and Feingold opined that Drake's injuries may have healed more fully if he had attended all of his physical therapy appointments.[11]

Evidence of the missed therapy appointments had a logical tendency to aid the jury in the determination of an issue of this case, the amount of damages sought by the plaintiff. When the plaintiff's counsel asked Adler if there are any remedies available to fix Drake's injury, he responded: "No. This is a chronic and permanent brachial plexus injury that can only improve with additional therapy, which in boys is really required until the age of skeletal maturity at twenty-one." Because the plaintiff offered such evidence to establish the extent of damages for Drake, evidence of any missed physical therapy appointments was material to the jury's determination of damages, if it were to determine that the defendant was liable. Accordingly, we conclude that the evidence was relevant.[12]

---

[11] It is true, as the plaintiff suggests, that no evidence precisely quantified an increment of aggravation. In general, however, fact finders need not necessarily require evidentiary precision in order to reach a reasonable result. See footnote 14 of this opinion.

[12] The plaintiff also claims that evidence of the missed therapy appointments was irrelevant because a parent's failure to mitigate damages cannot be imputed to that parent's child. The plaintiff did not preserve this claim and thus seeks reversal pursuant to the plain error doctrine.

"The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *In re Summer S.*, 124 Conn. App. 540, 542 n.2, 5 A.3d 972 (2010). "Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Collins*, 124 Conn. App. 249, 253 n.3, 5 A.3d 492, cert. denied, 299 Conn. 906, 10 A.3d 523 (2010). We conclude that

The plaintiff maintains, however, that even if the evidence was relevant, its probative value was outweighed by the danger of unfair prejudice. It is well established that "relevant evidence may be excluded if it has a tendency to prejudice unduly the minds of the jurors. Relevant evidence is excluded . . . when its probative value is outweighed by the danger of unfair prejudice. . . . To be unfairly prejudicial, evidence must be likely to cause a disproportionate emotional response in the jury, thereby threatening to overwhelm its neutrality and rationality to the detriment of the opposing party. . . . We have recognized four situations in which the potential prejudicial effect of relevant evidence would suggest its exclusion. These are: (1) where the facts offered may unduly arouse the [jurors'] emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Citations omitted; internal quotation marks omitted.) *State* v. *Bonner*, 290 Conn. 468, 498, 964 A.2d 73 (2009).

The plaintiff claims that evidence of the missed therapy appointments was misleading, confusing and unfairly prejudicial because such evidence was "meant to cast suspicion that the missed appointments were linked to the cause of [Drake's injury]." As we stated previously, the evidence was admissible. The record does not compel the conclusion that such evidence was so unfairly prejudicial that its admission amounted to an abuse of discretion. Accordingly, we conclude that the court did not abuse its discretion by permitting

the plaintiff's claim does not present the type of extraordinary circumstances that would warrant application of the plain error doctrine.

evidence of Drake's missed physical therapy appointments.

## II

The plaintiff next argues that the court erred by instructing the jury in any fashion regarding the doctrine of mitigation of damages. Specifically, she argues that the evidence presented at trial regarding mitigation of damages was insufficient to support such a charge to the jury. We do not agree that the court erred by charging the jury.[13]

The following additional facts are relevant to our resolution of the plaintiff's claim. After the close of evidence, the court instructed the jury on the issue of mitigation of damages: "There has been evidence regarding [the plaintiff's] failure to take [Drake] to medical and therapy appointments as recommended. You may consider this evidence insofar as it relates to a failure to mitigate damages. A person who has been injured by the negligence of another has a duty to mitigate his damages, that is, he must use reasonable care to promote recovery or prevent any aggravation of his injuries. The defendant has the burden of proof on mitigation of damages.

"You may also consider [the plaintiff's] failure to take [Drake] to medical care and therapy appointments on the issue of proximate cause as the defendants claim that [Drake's] current condition was caused in whole or in part by this failure.

"The plaintiff has the burden of proof with respect to causation. If you conclude that the plaintiff has proved by a preponderance of the evidence that [the defendant] violated the standard of care applicable to obstetricians in August, 2003, and that that violation

---

[13] The plaintiff preserved this claim by specifically requesting that the court instruct the jury that it was not to consider mitigation of damages.

was more likely than not the proximate cause of the brachial plexus injury to . . . Drake, then you will consider the question of damages. . . .

"You are not to draw an inference one way or the other from the fact that I charge you on the issue of damages. The rule of damages is as follows: insofar as money can do it, the plaintiff is to receive fair, just, and reasonable compensation for all injuries and losses past and future which are proximately caused by the defendant's proven negligence."

"It has long been a rule of general application that one who has been injured by the negligence of another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries. . . . When there are facts in evidence which indicate that a plaintiff may have failed to promote his recovery and do what a reasonably prudent person would be expected to do under the same circumstances, the court, when requested to do so, is obliged to charge on the duty to mitigate damages." (Citation omitted; internal quotation marks omitted.) *Jancura* v. *Szwed*, 176 Conn. 285, 288, 407 A.2d 961 (1978).

We conclude that the court did not err by instructing the jury on the doctrine of mitigation of damages. In *Herrera* v. *Madrak*, 58 Conn. App. 320, 324, 752 A.2d 1161 (2000), this court held that there was evidence sufficient to warrant a jury charge on mitigation of damages where the plaintiff had missed more than twelve physical therapy appointments over a span of seven months. Here, Drake missed approximately half of his physical therapy appointments; failing to attend six out of eleven scheduled appointments. See footnote 10 of this opinion. That fact, in addition to the testimony of Adler and Feingold pertaining to the negative consequences of missing physical therapy appointments, was sufficient to warrant a jury instruction on the doctrine

of mitigation of damages.[14] Accordingly, the court did not err in so instructing the jury.

### III

The plaintiff finally claims that the court erred by charging the jury with a legally incorrect instruction regarding mitigation of damages. Specifically, the plaintiff argues that the court erred in its charge to the jury because it did not instruct the jury that it may reduce damages only if it found that the defendant had proven by a preponderance of the evidence that any failure to mitigate damages caused an aggravation of the injury. We agree.

The following additional facts are relevant to our resolution of this claim. Prior to the court's charge to the jury, the plaintiff submitted a request to charge regarding mitigation of damages. The proposed charge stated the following: "There has been evidence introduced regarding [the plaintiff's] failure to take [Drake] to medical care and therapy appointments as recommended. It is the law in Connecticut that an individual who has been injured by the negligence of another must use reasonable care to promote recovery or prevent any aggravation of these injuries. This is the duty to mitigate damages. It is related to the issue of proximate cause, as the defense is claiming that some or all of [Drake's] current condition was caused by [the plaintiff's] failure to obtain appropriate treatment.

"To claim successfully that the plaintiff failed to mitigate damages, the defendant must show that the plaintiff failed to take reasonable action to lessen the

---

[14] There was no express quantification by any witness as to the precise extent of aggravation caused by the failure to attend therapy fully. Though some reasonable basis for damages, or their reduction, must appear in the record, express quantification may be impossible in many circumstances, and uncertainty frequently may be addressed by application of the burden of proof. See, e.g., *Dent* v. *Lovejoy*, 85 Conn. App. 455, 470–71, 857 A.2d 952 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

damages; that the damages were in fact enhanced by such failure; and that the damages which could have been avoided can be measured with reasonable certainty.

"I charge you in this case that it is the defendant who has the burden of proof on mitigation of damages, and that the evidence offered by the defendant is legally insufficient to support a finding of mitigation of damages. Therefore, I charge you that you are not to consider [the plaintiff's] failures to take him to recommended therapy and medical appointments during your deliberations."[15]

The court nonetheless instructed the jury as set forth in part II of this opinion. After delivering its charge, the court asked if there were any exceptions, to which the plaintiff's counsel replied: "The only exception that I'd make on behalf of the plaintiff relates to the court's charge on damages, and I would simply rely on the proposed charge which I submitted . . . ."

"When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will

---

[15] The plaintiff's request to charge, though minimal, did include as prerequisites for application of the doctrine that the jury find that damages were enhanced in fact by the failure to mitigate and that the damages "which could have been avoided" were reasonably measurable. This language adequately presented the concept that the jury should deduct only those damages found to have been caused by a failure to mitigate.

not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Griggs*, 288 Conn. 116, 124, 951 A.2d 531 (2008).

Our analysis is guided by *Preston* v. *Keith*, 217 Conn. 12, 584 A.2d 439 (1991). In that case, which arose from an automobile accident, "abundant evidence" was introduced to the effect that "the plaintiff did not fully follow her therapist's directions." (Internal quotation marks omitted.) Id., 15. The trial court instructed the jury on the issue of mitigation of damages, "but its charge did not discuss the relationship between proximate cause and mitigation of damages, nor did it state which party bears the burden of proof on this issue." Id. This court had reversed as to both issues. Id., 14. The Supreme Court reversed this court as to the first issue, holding that the trial court's instructions were adequate as to the causation issue, and affirmed as to the second issue, holding that the trial court had not adequately explained the respective burdens of proof. Id.

In the course of its opinion, the Supreme Court discussed the relationship between the "duty" to mitigate damages and proximate cause. It long has been established that "one who has been injured by the negligence of another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries." (Internal quotation marks omitted). Id., 15. Citing *Morro* v. *Brockett*, 109 Conn. 87, 94, 145 A. 659 (1929), the Supreme Court stated that "it becomes incumbent upon the defendant if he seeks to exonerate himself from responsibility for *a portion* of the consequences to show that some of these had their proximate cause in the failure of the plaintiff to act in good faith in an attempt to promote recovery and avoid aggravation of the initial injury." (Emphasis added; internal quotation marks omitted). *Preston* v. *Keith*, supra, 217 Conn. 16. The court in *Preston* stated that the theoretical underpinning of *Morro* implicated proximate cause: the

defendant's negligence was not the proximate cause of injuries which could have been avoided had the plaintiff exercised due care regarding recovery. Id.

The court in *Preston* modulated its position regarding the relationship between proximate cause and mitigation of damages. It noted that instructing a jury in such terms "could promote needless confusion." Id., 17. There fairly obviously could be situations in which *a* proximate cause of an aggravation of an injury is the defendant's negligence; the plaintiff's failure to mitigate damages also may be a proximate cause of the aggravation. To avoid confusion, the court held that an instruction is sufficient if it conveys the proposition that the doctrine of mitigation of damages should be applied by a jury "only if a plaintiff's alleged failure to mitigate is found to have caused the aggravation of the injury." Id., 19. Instructing a jury regarding the relationship between proximate cause and mitigation of damages would nonetheless not be erroneous, so long as the relationship is stated in terms which would not confuse the jury. Id., 18–19. The court mentioned that the policy may well be easier to state than it is to instruct lay jurors coherently: a plaintiff ought not be able to recover damages for such portion of his condition which, by the exercise of reasonable care, he could have avoided. Id., 18.

The actual instruction in *Preston* was, then, found to be adequate on the issue of causation. After describing the duty to mitigate damages, the trial court had charged: "If you find that in fact, [the plaintiff failed to mitigate damages], then you should reduce any award you might give her to such a sum as you think measures the amounts which her damages have been increased by her failure [of] her duty to mitigate damages and do her best to get better." (Internal quotation marks omitted.) Id., 15 n.4.

The plaintiff argues that the court's instruction in the present case did not adequately explain the relationship between the duty to mitigate and the connection to an aggravation of the injury. We agree. Although the conceptual basis need not be fully explicated, *Preston* and cases such as *Hallas* v. *Boehmke & Dobosz, Inc.*, 239 Conn. 658, 669, 686 A.2d 491 (1997), make it clear that a jury may apply the doctrine to reduce damages by the amount that it finds that the plaintiff "caused" by failing to mitigate; only the amount of the aggravation or the increase of injury or damages so caused is to be deducted from the award of damages.[16]

The charge given in this case regarding mitigation of damages stated in its entirety: "There has been evidence regarding [the plaintiff's] failure to take [Drake] to medical and therapy appointments as recommended. You may consider this evidence insofar as it relates to a failure to mitigate damages. A person who has been injured by the negligence of another has a duty to mitigate his damages, that is, he must use reasonable care to promote recovery or prevent any aggravation of his injuries. The defendant has the burden of proof on mitigation of damages. You may also consider [the plaintiff's] failure to take [Drake] to medical care and therapy

---

[16] See, for example, the judicial branch website sample instruction regarding mitigation of damages: "You should also consider what efforts the plaintiff took to minimize the effects of (his/her) injury. One who has been injured by the negligence of another must use reasonable care, such as following doctor's instructions regarding the treatment of (his/her) injuries, to promote recovery and prevent any aggravation or increase of the injury. The plaintiff is not entitled to be compensated for any injury or aggravation of injury caused by (his/her) failure to minimize damages. Thus, you should reduce the damages awarded to the plaintiff to the extent you find that the plaintiff made (his/her) condition worse by not taking reasonable care to promote (his/her) recovery or prevent any aggravation or increase of the injury. It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff has failed to minimize (his/her) damages." Conn. Civil Jury Instructions (March 25, 2011) 3.4-8, available at http://www.jud.ct.gov/ji/civil/part3/3.4-8.htm (last visited September 13, 2011).

This sample instruction was added to the website after the date of the trial in the matter at hand.

appointments on the issue of proximate cause as the defendants claim that [Drake's] current condition was caused in whole or in part by this failure. The plaintiff has the burden of proof with respect to causation." This instruction did not clearly state, nor is it readily inferred by a layperson, that the jury is to deduct only that portion of damages attributable to an aggravation or increase in injury caused by the failure to mitigate and that the defendant has the burden to prove such aggravation or increase. Although the fifth sentence, charging that the jury *also* may consider the failure to mitigate on the issue of proximate cause, in the sense that the defendant claimed that Drake's condition was caused *in whole or in part* by the failure to mitigate, was closer to the mark, it nonetheless did not explain the effect of the doctrine clearly and, especially in view of the next sentence, stating that the plaintiff has the burden of proof as to causation, may have resulted in misapprehension by the jury. Because an exception was taken by the plaintiff, as to the charge on damages, and because a request to charge[17] on the subject had been filed by the plaintiff, we reverse the judgment of the trial court.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[17] The plaintiff's request to charge was not ideal and did not follow precisely the language of the case law. It nonetheless presented the issue sufficiently to preserve the claim for appeal. The final paragraph of the request, which purported to remove the matter altogether from the consideration of the jury, may be seen as preserving the plaintiff's position on the evidence, which position we have rejected.