RICHARD MASSE, JR. *v.* SUSAN PEREZ
(AC 33276)

Bear, Sheldon and West, Js.

Argued September 11—officially released December 25, 2012

*Jon L. Schoenhorn*, with whom, on the brief, was *Joel A. DeFelice*, for the appellant (defendant).

*Tushar G. Shah*, for the appellee (plaintiff).

*Opinion*

WEST, J. The defendant, Susan Perez, appeals from the judgment of the trial court rendered in favor of the plaintiff, Richard Masse, Jr., for breach of fiduciary duty, conversion, statutory theft and unjust enrichment. On appeal, the defendant claims that the court improperly (1) awarded treble damages despite insufficient evidence and (2) precluded her from offering relevant evidence. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. The defendant is the plaintiff's mother. The plaintiff's grandmother, Velma Krestan, set up a trust in the form of three bank accounts naming the plaintiff as the sole beneficiary and the defendant as the trustee. As of May 29, 1995, the trust cumulatively was valued at

$79,884.21. From 1995 to 2001, the defendant expended trust funds for the benefit of the plaintiff. On July 16, 2001, the trust cumulatively was valued at $46,522.54. The defendant withdrew these remaining funds from the trust.

On February 21, 2008, the plaintiff filed a seven count amended complaint sounding in breach of fiduciary duty, statutory theft, conversion, fraudulent concealment, fraudulent misrepresentation, unjust enrichment and negligent representation. In his complaint, the plaintiff alleged, inter alia, that the defendant "expunged and/or removed and/or spent the funds for her personal use from the [t]rust without authorization or consent from the plaintiff." On March 17, 2008, the defendant filed an answer, which denied this allegation, and two special defenses to each count.[1]

Following a trial to the court, held on October 6 and 7, 2010, the court rendered judgment in favor of the plaintiff on January 4, 2011, on the counts sounding in breach of fiduciary duty, statutory theft, conversion and unjust enrichment. In doing so, the court rejected the defendant's special defenses. In its memorandum of decision, the court found that the plaintiff established that he had sustained compensatory damages in the amount of $46,522.54, and was entitled to interest of 5 percent per year pursuant to General Statutes § 37-3a, and treble damages pursuant to General Statutes § 52-564, for a final award of $206,233.35. On January 20, 2011, the defendant filed a motion to reargue, which the court denied on February 4, 2011. This appeal followed.

I

The defendant first claims that the court improperly awarded treble damages for statutory theft pursuant

---

[1] The defendant's first special defense alleged that the plaintiff's action is barred by the statute of limitations pursuant to General Statutes § 52-577. The defendant's second special defense alleged that each of the plaintiff's claims is barred by the doctrine of unclean hands.

to § 52-564[2] despite insufficient evidence regarding the defendant's intent to deprive the plaintiff of moneys, a necessary element of statutory theft. In particular, the defendant contends that the court, in order to establish intent, relied on the single action of the defendant's withdrawal of the funds and on the adverse inference that the plaintiff used the money for her own benefit, based on its disbelief of the defendant's testimony that she used the money for the plaintiff's benefit. We disagree.

The following standard of review is applicable to sufficiency of the evidence claims. "[W]e must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . [W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . ." (Internal quotation marks omitted.) *Rana* v. *Terdjanian*, 136 Conn. App. 99, 113, 46 A.3d 175, cert. denied, 305 Conn. 926, 47 A.3d 886 (2012). "We do not examine the record to determine whether the trier of fact could have reached

___

[2] Although the defendant claims that the trial court improperly awarded damages generally, the entirety of her brief is directed against the court's award of treble damages for statutory theft. To the extent that the defendant claims that the court improperly awarded damages for breach of fiduciary duty, conversion and unjust enrichment, we decline to address these claims on account of inadequate briefing. See *State* v. *Koslik*, 137 Conn. App. 855, 858–59 n.7, 49 A.3d 1067 (2012) ("It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must *clearly and fully* set forth their arguments in their briefs." [Emphasis in original; internal quotation marks omitted.]).

a conclusion other than the one reached . . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *Blackwell* v. *Mahmood*, 120 Conn. App. 690, 701, 992 A.2d 1219 (2010).

"[E]vidence is not insufficient . . . because it is conflicting or inconsistent. [The trier of fact] is free to juxtapose conflicting versions of events and determine which is more credible." (Internal quotation marks omitted.) *Richards* v. *Richards*, 82 Conn. App. 372, 376, 844 A.2d 889 (2004). In this regard, "[w]e are not in a position to question the court's credibility finding. The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Chernick* v. *Johnston*, 100 Conn. App. 276, 282, 917 A.2d 1042, cert. denied, 282 Conn. 919, 925 A.2d 1101 (2007).

"Section 52-564 provides: Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages. We consistently have held that [s]tatutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119. . . . A person commits larceny within the meaning of . . . § 53a-119 when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. An owner is defined, for purposes of § 53a-119, as any person who has a right to possession superior to that of a taker, obtainer or withholder. General Statutes § 53a-118 (a) (5). . . . Therefore, statutory theft requires a plaintiff to prove . . . intent . . . ." (Citations omitted; internal quotation marks omitted.) *Rana*

v. *Terdjanian*, supra, 136 Conn. App. 113–14. Within the context of larceny, which is synonymous with statutory theft, this court previously has stated that "[i]ntent may be inferred by the [trier of fact] from the conduct of the defendant." *State* v. *Kimber*, 48 Conn. App. 234, 240, 709 A.2d 570, cert. denied, 245 Conn. 902, 719 A.2d 1164 (1998). Our Supreme Court has concluded that the proper standard of proof for statutory theft is the preponderance of the evidence standard. *Stuart* v. *Stuart*, 297 Conn. 26, 42–44, 996 A.2d 259 (2010).

In the present case, the court found that the defendant withdrew $46,522.54 from the plaintiff's trust bank account. That finding is supported by the defendant's own testimony and by the corresponding withdrawal receipt. Although the funds were not withdrawn directly from any of the three bank accounts listed in the plaintiff's amended complaint, the defendant testified that she transferred funds from the trust bank accounts into a joint checking account set up between herself and the plaintiff. The defendant acknowledged that the funds in the joint checking account were the plaintiff's funds to be used for his benefit.

With respect to these funds, the defendant testified that the plaintiff had instructed her to withdraw the funds and to put them in the names of his half brother and half sister because he needed the money out of his account so that he could receive state benefits. The defendant testified that she had been instructed to give $20,000 to the plaintiff's half brother and $20,000 to the plaintiff's half sister. The defendant further testified that the plaintiff had authorized her to spend the remaining funds for the benefit of the plaintiff and his children. The court did not credit this testimony from the defendant regarding the disbursement of the trust funds. The court found that "[t]he defendant was not able to satisfactorily explain how she used this money," that "[s]he did

not use it for the plaintiff's benefit" and that "[t]he money is no longer in a trust account."

In support of these findings, the court had before it the following testimony. The plaintiff testified that he did not instruct the defendant to give any trust funds to his half brother or half sister. The plaintiff also testified that he did not ask the defendant to use any trust funds for his children. The plaintiff further testified that any items given to his children by the defendant were gifts from the defendant as opposed to authorized expenditures from the trust fund. In fact, the defendant admitted that, at times, she spent her own funds from a separate account for the benefit of the plaintiff's children. Furthermore, Rolando Perez,[3] the defendant's former husband and the plaintiff's stepfather, testified that the defendant had, "without telling [the plaintiff] started taking money from his account." The defendant testified that by 2002, the trust funds were gone. Although the plaintiff admitted that some trust funds were used for his benefit, he testified that $35,000 to $45,000 was missing. Thus, there was sufficient evidence to support the court's findings that the defendant withdrew funds with the intent to deprive the plaintiff of those funds.[4]

The defendant argues, however, that there was no evidence that she used any of the withdrawn funds for her own benefit. The defendant testified that she gave $20,000 to the plaintiff's half brother, $20,000 to the plaintiff's half sister and the remainder to the plaintiff and his children. Again, the court did not credit this testimony but, rather, concluded that "[t]he defendant was not able to satisfactorily explain how she used this

---

[3] Although the trial transcript identifies him as "Orlando Perez," evidence in the record identifies him as "Rolando Perez."

[4] Although there was evidence that the plaintiff tangentially may have benefited from the defendant's withdrawal of the funds by way of qualifying for state aid, the court found that the defendant did not *use* the funds for the plaintiff's benefit.

money." "[I]t is axiomatic under Connecticut law that, while a [trier of fact] may reject a defendant's testimony, a [trier of fact] in rejecting such testimony cannot conclude that the opposite is true. . . . Thus, under Connecticut law, the [trier of fact] is not permitted to infer, from its disbelief of the defendant's testimony, that any of the facts which he denied were true." (Internal quotation marks omitted.) *State* v. *McCarthy*, 105 Conn. App. 596, 619, 939 A.2d 1195, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). Likewise, a trier of fact "cannot, from a disbelief of a defendant's testimony, infer that a plaintiff's allegation is correct." *Novak* v. *Anderson*, 178 Conn. 506, 508, 423 A.2d 147 (1979).

Although the plaintiff arguably offered no affirmative evidence that the defendant benefited from the withdrawal of the funds, benefit on behalf of the defendant is not an element of statutory theft. A person commits statutory theft when, "with intent to *deprive* another of property or to *appropriate* the same to *himself or a third person,* he wrongfully takes, obtains or withholds such property from an owner." (Emphasis added; internal quotation marks omitted.) *Rana* v. *Terdjanian,* supra, 136 Conn. App. 114. There was sufficient evidence that the defendant withdrew the funds with the requisite intent.[5] "Intent may be inferred by the [trier of fact] from the conduct of the defendant." *State* v. *Kimber,* supra, 48 Conn. App. 240. Such an inference may be drawn from a defendant's withdrawal of trust funds when the funds are not used for the benefit of the beneficiary and the trust has been exhausted.

---

[5] The court concluded that the defendant's withdrawal of the funds "establishes intent." The defendant argues that withdrawal alone "is a neutral action that can be proper or improper depending on the nature of the use and circumstances." Regardless of the propriety of this conclusion, the court made additional findings and "[w]e . . . must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment." (Internal quotation marks omitted.) *Rana* v. *Terdjanian,* supra, 136 Conn. App. 113.

Although the defendant testified that she was instructed to withdraw the funds, the plaintiff testified that he never authorized the defendant to withdraw the funds. "The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Chernick* v. *Johnston*, supra, 100 Conn. App. 282.

In *Suarez-Negrete* v. *Trotta*, 47 Conn. App. 517, 521–22, 705 A.2d 215 (1998), this court concluded that evidence presented was sufficient to establish statutory theft when, inter alia, "the defendant's conduct was unauthorized." Likewise, in the present case, there was sufficient evidence to conclude that the defendant's withdrawal of the plaintiff's funds was unauthorized and, therefore, constitutes an intentional deprivation of property for the purpose of establishing statutory theft. Because § 52-564 provides that any person committing statutory theft "shall pay the owner treble his damages" the court's award of treble damages was not improper.

II

The defendant next claims that the court improperly precluded her from offering relevant evidence regarding the plaintiff's state aid eligibility applications.[6] The defendant contends that she attempted to offer this evidence in the form of a written motion seeking the plaintiff's authorization for disclosure of records from the department of social services (department) and by way of cross-examination of the plaintiff as to the content of those records, but that the court precluded such offers of evidence. The defendant argues that these decisions constitute reversible error.[7] We disagree.

___

[6] The defendant submitted into evidence one application dated September 12, 2001.

[7] The plaintiff argues that the defendant did not preserve this claim for appeal because she had records from the department in her possession but failed to offer them into evidence. "[A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The

The crux of this claim concerns the court's refusal to order the plaintiff to authorize disclosure of records from the department. "We have long recognized that the granting or denial of a discovery request . . . is subject to reversal only if such an order constitutes an abuse of . . . discretion." (Internal quotation marks omitted.) *Coss* v. *Steward*, 126 Conn. App. 30, 46, 10 A.3d 539 (2011). Practice Book § 13-2 provides in relevant part: "In any civil action . . . where the judicial authority finds it reasonably probable that evidence outside the record will be required, a party may obtain in accordance with the provisions of this chapter discovery of information or disclosure, production and inspection of papers, books, documents and electronically stored information *material* to the subject matter involved in the pending action, which are not privileged, whether the discovery or disclosure relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, and which are within the knowledge, possession or power of the party or person to whom the discovery is addressed. Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and

---

requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Emphasis in original; internal quotation marks omitted.) *Przekopski* v. *Zoning Board of Appeals*, 131 Conn. App. 178, 189, 26 A.3d 657, cert. denied, 302 Conn. 946, 30 A.3d 1 (2011). In the present case, however, the defendant, by written motion, sought the plaintiff's authorization for disclosure of *additional* records from the department and sought testimony concerning the content of those *additional* records by way of cross-examination of the plaintiff. The court denied the motion and sustained the objection of the plaintiff's counsel regarding such testimony. Although the defendant's second claim was stated generally, it clearly concerned these two decisions of the court. The defendant's second claim, therefore, distinctly was raised by the defendant and addressed by the court. Accordingly, the defendant's second claim properly was preserved for appeal.

if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure. . . ." (Emphasis added.) Accordingly, "[t]he granting or denial of a discovery request rests in the sound discretion of the court. . . . The court's discretion applies to decisions concerning whether the information is *material,* privileged, substantially more available to the disclosing party, or within the disclosing party's knowledge, possession or power . . . ." (Citations omitted, emphasis added.) *Standard Tallow Corp.* v. *Jowdy,* 190 Conn. 48, 57–60, 459 A.2d 503 (1983).

The claim also concerns the court's refusal to permit cross-examination of the plaintiff regarding the content of those records. "A trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was . . . a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *Gianetti* v. *Norwalk Hospital,* 304 Conn. 754, 786, 43 A.3d 567 (2012).

Prior to trial, the court considered the defendant's motion seeking the plaintiff's authorization for disclosure of records from the department. The defendant's counsel admitted that he was in possession of the plaintiff's state aid eligibility applications through 2007, but sought records subsequent thereto. The court reserved any decision until cross-examination of the plaintiff. During cross-examination of the plaintiff, the defendant's counsel renewed the defendant's motion. The plaintiff's counsel objected on the ground that the

defendant had records through 2007 and that any records thereafter were irrelevant. The court agreed with the plaintiff's counsel and concluded: "I don't understand what further information will grant you. . . . I'll consider [the plaintiff's] testimony." The defendant's counsel then attempted to elicit responses from the plaintiff concerning the content of the subject records and the plaintiff's counsel again objected. The court concluded that such testimony was irrelevant.

The defendant now challenges the court's finding that the evidence was irrelevant. "All relevant evidence is admissible, except as otherwise provided by the constitution of the United States, the constitution of this state, the Code or the General Statutes. Evidence that is not relevant is inadmissible." Conn. Code Evid. § 4-2. "Evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable." (Citation omitted; internal quotation marks omitted.) *Drake* v. *Bingham*, 131 Conn. App. 701, 708, 27 A.3d 76, cert. denied, 303 Conn. 910, 32 A.3d 963 (2011).

"Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *Lombardi* v. *East Haven*, 126 Conn. App. 563, 572,

12 A.3d 1032 (2011). Furthermore, "[t]he fact that the [trier of fact] would have . . . to rely on inferences to make [a] determination does not preclude the admission of . . . evidence. . . . The trial court [however] properly could [exclude] evidence where the connection between the inference and the fact sought to be established was so tenuous as to require the [trier of fact] to engage in sheer speculation." (Citations omitted.) *Bovat* v. *Waterbury,* 258 Conn. 574, 596, 783 A.2d 1001 (2001). "Because the law furnishes no precise or universal test of relevancy, the question must be determined on a case by case basis according to the teachings of reason and judicial experience." (Internal quotation marks omitted.) *State* v. *Erickson,* 297 Conn. 164, 178, 997 A.2d 480 (2010).

In the present case, the defendant's counsel admitted that he was in possession of the plaintiff's state aid eligibility applications through 2007. The defendant's counsel submitted into evidence one state aid eligibility application, dated September 12, 2001. Rather than attempt to submit additional applications into evidence, the defendant's counsel sought the plaintiff's authorization for disclosure of additional records from the department and attempted to elicit responses from the plaintiff concerning the content of those records. The defendant argues that such evidence was relevant to her claim that the plaintiff had instructed her to withdraw the funds for the purpose of his state aid eligibility because it shows that the plaintiff received an ongoing benefit from the defendant's withdrawal of the trust funds. There was sufficient evidence in the defendant's possession in the form of the plaintiff's state aid eligibility applications through 2007 for this purpose. Subsequent records would be " 'merely cumulative.' " *Lombardi* v. *East Haven,* supra, 126 Conn. App. 572.

The defendant further argues that such evidence was relevant to the plaintiff's credibility because it presents

the potential for "repetitive and false/fraudulent statements" made by the plaintiff in order to continue to receive state aid. On the one state aid eligibility application submitted into evidence, the plaintiff indicated that he did not have trust funds or expect to receive an inheritance. In its memorandum of decision, the court considered the admitted state aid eligibility application in the context of the defendant's special defense of unclean hands. The court concluded that "because the defendant failed to keep the plaintiff informed as to the details of the trust, it is possible that the plaintiff's response on the document was motivated by ignorance and not deception."[8] Prior to 2007, however, the trust funds were exhausted and, as such, any negative response to these questions on any subsequent applications would be irrelevant.[9] Thus, the court did not abuse its discretion when it refused to order the plaintiff to authorize the disclosure of records from the department subsequent to 2007 or to permit cross-examination of the plaintiff as to the content of those records.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] The plaintiff testified that he did not believe that he had any trust funds nor did he expect to receive an inheritance because the defendant was still alive and the defendant had informed him that inheritance went from his grandmother to the defendant and then, upon the defendant's death, to him.

[9] At trial, the defendant's counsel contended that the applications require the disclosure of any pending actions and, therefore, argued that additional applications may be relevant as to the plaintiff's credibility to prove whether he disclosed the existence of the present action. The defendant's counsel also attempted to cross-examine the plaintiff on whether he disclosed the existence of the present action on subsequent applications. Such an inquiry based on speculation that the plaintiff may have provided a false statement on an application years after the events at issue in this case, is far too tenuous. Again, there was sufficient evidence in the defendant's possession in the form of the plaintiff's state aid eligibility applications through 2007. "A trial is not an opportunity for counsel to embark on a fishing expedition or to induce fact finders to engage in speculation." *Deegan* v. *Simmons*, 100 Conn. App. 524, 541, 918 A.2d 998, cert. denied, 282 Conn. 923, 925 A.2d 1103 (2007).