******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD HYLTON *v.* GARFIELD GUNTER ET AL.
(AC 33316)

Beach, Alvord and Bishop, Js.

*Argued January 13—officially released May 19, 2015*

(Appeal from Superior Court, judicial district of Hartford, Hon. Richard M. Rittenband, judge trial referee)

*Houston Putnam Lowry*, with whom, on the brief, was *Julie A. Morgan*, for the appellant (named defendant).

*Gerald M. Beaudoin*, with whom, on the brief, was *Francisco A. Cardona*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. A formalized business structure can outlive its usefulness. In this case, the parties, along with several other individuals, joined to become members of a limited liability company, Progressive Electric & Telecommunications, LLC (company). The defendant Garfield Gunter[1] and the plaintiff, Richard Hylton, executed an operating agreement, which governed, among other items, the administration of capital accounts. Over time, other members left the venture, and only the defendant was left as a revenue-producing member. The company was not dissolved nor were the agreement's terms amended to reflect changed circumstances. This action concerns the effort of the plaintiff to secure moneys that he claims he is entitled to, by virtue of his original investment and the terms of the operating agreement, and the concomitant effort of the defendant to protect the fruits of his labor.

This appeal comes to us on remand from the Supreme Court. In *Hylton* v. *Gunter*, 142 Conn. App. 548, 66 A.3d 517 (2013), rev'd, 313 Conn. 472, 97 A.3d 970 (2014), the defendant appealed from the judgment of the trial court rendered in favor of the plaintiff. This court dismissed the appeal of the defendant for lack of a final judgment. Id., 554. Our Supreme Court reversed that decision; see *Hylton v. Gunter*, 313 Conn. 472, 97 A.3d 970 (2014); and remanded the case to us with direction to consider the merits of the defendant's claims on appeal. Id., 489. Consistent with that mandate, we now consider whether the trial court erred in finding in favor of the plaintiff on the eight counts directed against the defendant.[2] We reverse the judgment of the trial court.

The trial court found the following facts. "Sometime prior to September 21, 2006, the plaintiff . . . the defendant . . . Derrick Fraser, David Morgan and Wellesley Shaw decided to form [the company] the purpose of which was to provide electrical materials and service for construction projects. An Operating Agreement was executed as to the terms and conditions of the [company] subsequent to September 21, 2006, but back dated to that date. . . . [The plaintiff, the defendant] and Derrick Fraser signed the Operating Agreement, but David Morgan and Wellesley Shaw did not. Nonetheless each party contributed a 20 percent interest in the company in the amount of $1500 for a total of $7500 start-up money. Subsequently, Morgan, Shaw and Fraser had their interest purchased by the [company] leaving the two remaining members . . . the plaintiff and the defendant . . . as equal members of the [company]. [The defendant] was named manager of the [company]. All of the parties worked on the jobs obtained by the [company] and took draws against the profits. On July 7, 2007, Morgan and Shaw were bought out by the [company] and on May 2, 2008, Fraser sold his interest to the [company]. Even though [the plaintiff

and the defendant] were equal members in the [company], the day-to-day control was in the hands of [the defendant] who was not only the managing member but was also a licensed electrician, [the plaintiff] being only an apprentice. The books and records of the [company] were technically open to [the plaintiff], but they were in fact controlled by [the defendant]. [The plaintiff] apparently made only one effort to review the records by obtaining from the bookkeeper of the company a flash drive. This occurred in the spring of 2008, and [the plaintiff] stopped working for the [company] by the end of July, 2008. There is a dispute between [the plaintiff and the defendant] as to whether [the defendant] failed to pick up [the plaintiff] with the vehicle that belonged to the [company] and take him to the jobs. By July, 2008, [the plaintiff] was no longer doing work in the field and had become suspicious based upon his review of the records that [the defendant] was not providing [the plaintiff's] fair share of the profits and was also using moneys of the [company] for his own personal use. By return date of December 8, 2009, [the plaintiff] brought this action against [the defendant] and [the company] to recover what he believed were shares of profits that had been illegally withheld from him and to recover 50 percent of the moneys from [the defendant] that were used for [the defendant's] personal expenses."

The plaintiff brought an eight count complaint that alleged, as against the defendant, negligence, breach of contract, unjust enrichment, statutory theft, conversion, breach of fiduciary duty, breach of implied duty of good faith and fair dealing, and fraud. The case was tried to the court.

The court found that the defendant and the company's accountant manipulated the company's books and tax returns in order to show a zero balance in the partnership's capital account. The court found that there had been a series of transactions between the company and the defendant, including loans to the defendant, a loan to the defendant's church and questionable payments to the defendant, all of which resulted in the enrichment of the defendant at the expense of the plaintiff. The transgressions were aggravated by an accounting practice that rendered the plaintiff's capital account penniless. The court determined that the plaintiff was entitled to $114,216 in compensatory damages plus 50 percent of amounts paid by the church on its loan. The court tripled the damages because of the statutory theft count, and also awarded attorney's fees. The court did not differentiate damages according to any of the eight counts, but rather found the defendant liable in the same amount on each count, except that damages on the statutory theft count were tripled. Following a hearing on attorney's fees, the court awarded the plaintiff $23,400 in punitive damages. This appeal followed.[3]

The defendant filed a motion for articulation, which the court granted. Thereafter, the defendant filed a motion for review of the articulation with this court, which this court granted.[4] The court issued a second articulation on May 22, 2012.

"[W]e must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . [W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Masse* v. *Perez*, 139 Conn. App. 794, 797–98, 58 A.3d 273 (2012), cert. denied, 308 Conn. 905, 61 A.3d 1098 (2013).

The defendant claims that the court erred when it determined that the plaintiff was entitled to distributions and that several fundamental misconceptions permeated the award. We agree.

We have carefully examined the record, including the transcript of proceedings and the exhibits. The court appears to have assumed that any irregularities in the financial affairs of the company, as orchestrated by the defendant, properly and automatically resulted in damage awards to the plaintiff. The operating agreement, in articles VII and VIII, however, did not require the disbursement or distribution of funds from the capital account at any time. Further, the court seems to have made no distinction between the company and the defendant, and we are unable to discern the precise evidentiary bases in support of the findings of liability on each count. As one example, the court found the defendant liable as to both the breach of contract count and the unjust enrichment count; ordinarily, recovery on the two counts is mutually exclusive. See, e.g., *Russell* v. *Russell*, 91 Conn. App. 619, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005) ("unjust enrichment and breach of contract are mutually exclusive theories of recovery"); see also *Gagne* v. *Vaccaro*, 255 Conn. 390, 401, 766 A.2d 416 (2001) ("lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment" [internal quotation marks omitted]).

We are left with the misapplication of the law as to all counts; in the circumstances, we find it pointless to examine the elements of each count and the court's

conclusions. We therefore reverse as to all counts,[5] and remand the case for a new trial on all but one of the counts. As to the count alleging fraud, we are confident that there was no evidence offered on the element of reliance,[6] and we therefore direct judgment for the defendant as to that count.

With respect to the count of fraud, the court found that the defendant's bookkeeping scheme to arrive at a zero balance in the capital account constituted fraud. A thorough review of the trial transcripts and the evidence submitted convinces us that no evidence was presented that the plaintiff did anything in reliance on the defendant's representations regarding the accounting. Furthermore, there was no other evidence of reliance as to any of the defendant's other allegedly improper actions; the plaintiff testified at trial, for example, that he learned only at trial that the defendant had taken a loan from the company. Because there is no evidence of the reliance element of fraud, the court's finding cannot stand.

The judgment is reversed with respect to the finding of fraud and the case is remanded to the trial court with direction to render judgment for the defendant on that count. The judgment is reversed as to the remaining seven counts and the case is remanded for a new trial on those counts.

In this opinion the other judges concurred.

[1] Progressive Electric & Telecommunications, LLC, was also a defendant, and was defaulted for failure to appear and for failure to appear at trial. This opinion does not affect any damages awarded as to the company. We refer to Gunter only as the defendant.

[2] The defendant claims that the court erred in making certain evidentiary rulings. We do not address these claims because they will not necessarily arise in a new trial.

[3] In *Hylton* v. *Gunter*, supra, 142 Conn. App. 548, the defendant appealed from the judgment of the trial court awarding compensatory damages and finding that the plaintiff was entitled to punitive damages in the form of attorney's fees. This court dismissed the appeal of the defendant, for lack of a final judgment pursuant to § 52-263, because at the time the appeal was filed, the trial court had not yet determined the amount of the award of punitive damages. Our Supreme Court reversed, concluding that an appealable final judgment existed even though the amount of common-law punitive damages, limited to attorney's fees, had not been determined. *Hylton* v. *Gunter*, supra, 313 Conn. 478. The court remanded the case to us with direction to consider the merits of the defendant's claims on appeal. Id., 489.

[4] This court ordered the trial court "to articulate: (1) why the plaintiff was entitled to one-half of the outstanding loan balance; (2) the portion of the operating agreement requiring the plaintiff to be notified of or approve the loan; (3) what portion of the operating agreement was violated and how; (4) how the operating agreement entitled the plaintiff to a forced distribution of the proceeds in his capital account when section 8.6 specifically provides that there is no such right; and (5) the factual and legal bases for finding the defendant liable for (i) negligence, (ii) breach of contract, (iii) conversion and (iv) unjust enrichment."

[5] We note that, inter alia, to prove: negligence, the plaintiff must prove a duty; *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 328, 107 A.3d 381 (2015); breach of contract, the plaintiff must prove a violation of the terms of the contract; *Pelletier* v. *Galske*, 105 Conn. App. 77, 81, 936 A.2d 689 (2007), cert. denied, 285 Conn. 921, 943 A.2d 1100 (2008); statutory theft and conversion, the plaintiff must prove he is the owner; *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 770–71, 905 A.2d 623 (2006); breach of a

fiduciary duty, the plaintiff must prove the existence of a fiduciary relationship; *2 National Place*, *LLC* v. *Reiner*, 152 Conn. App. 544, 551, 99 A.3d 1171 (2014); and breach of the implied covenant of good faith and fair dealing, the plaintiff must prove he has the right to receive benefits. *De La Concha of Hartford*, *Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 432–33, 849 A.2d 382 (2004).

[6] "The four essential elements of fraud are . . . that a false representation of fact was made . . . that the party making the representation knew it to be false . . . that the representation was made to induce action by the other party; and . . . that the other party did so act to her detriment." (Internal quotation marks omitted.) *Chase Manhattan Mortgage Corp.* v. *Machado*, 83 Conn. App. 183, 188, 850 A.2d 260 (2004).

———————————————