DIANNE MCGRATH *v.* KEITH B. GALLANT ET AL.
(AC 34552)

DiPentima, C. J., and Alvord and Pellegrino, Js.

Argued February 13—officially released June 4, 2013

*Joseph P. Secola*, for the appellant (plaintiff).

*Eric L. Sussman*, with whom, on the brief, was *Glenn W. Dowd*, for the appellees (defendants).

ALVORD, J. The plaintiff, Dianne McGrath, appeals from the judgment of the trial court upholding two orders of the Probate Court for the district of West Hartford that, inter alia, awarded fiduciary and attorney's fees to the defendants, Keith B. Gallant and Day Pitney, LLP. The plaintiff claims that the fiduciary fees that Gallant received as the executor of the will of William P. McGrath (decedent) and the trustee of the decedent's revocable trust (trust), and the attorney's fees that Gallant and Day Pitney, LLP, received as counsel for the estate of the decedent (estate), were unreasonable and excessive. Specifically, the plaintiff: (1) claims that the trial court did not properly make an independent determination of the reasonableness of the fiduciary and attorney's fees using the factors set forth in *Hayward* v. *Plant*, 98 Conn. 374, 384–85, 119 A. 341 (1923) (*Hayward* factors); and (2) urges this court to adopt a rule limiting the fiduciary and attorney's fees that can be collected from an estate to an amount proportionate to the size of the estate. We disagree with the plaintiff's claim that the court improperly applied the *Hayward* factors, and we decline the plaintiff's invitation to create new law. Accordingly, we affirm the judgment of the trial court.

The following facts were found by the trial court or are undisputed. The plaintiff and her two brothers are the children and the beneficiaries of the will and the trust of the decedent. At the time of the decedent's death, his estate consisted of liquid assets of nearly $850,000 and a parcel of real property in the Bahamas valued at approximately $800,000. The liquid assets were distributed within two years of the decedent's death, but the Bahamian property has not been sold. Since the decedent died, the Bahamian property has suffered erosion, and its price has been reduced significantly from the initial listing price of $800,000.

Animosity between the plaintiff and her brothers existed prior to the decedent's death; the plaintiff's brothers imposed a conservatorship on the decedent and the plaintiff hired Gallant, an attorney with Day Pitney, LLP, who was successful in having the conservatorship removed. Thereafter, the decedent hired Gallant to make changes to his will and to create the trust. Prior to the modification of the decedent's will, the three children were to receive equal shares of the estate, but the will was altered to reflect the decedent's desire that the plaintiff receive a proportionally greater share of the estate than her brothers.

Given the history of strife among his children, the decedent anticipated that the animosity among the siblings would only escalate after his death. He inserted an in terrorem clause[1] into his will and, believing that an attorney could best navigate the issues that his contentious children would present in the settlement of his estate, he engaged Gallant to serve as the executor of his will and the trustee of the trust. Unfortunately, the decedent was proven prescient and correct; after he died, the siblings fought incessantly.

The trial court recounted in its memorandum of decision that "[a] partial list of the issues dealt with by Gallant includes the plaintiff's request for an advance of funds and/or loan from the trust; the choosing of a listing agent for the Bahamian real estate; the lowering of the sales price of the Bahamian real estate; the presentation of a Bahamian will which would have resulted in a will contest in the Bahamas; access by the beneficiaries to the Bahamian property; a will contest threatened by [the decedent's] sons in Connecticut; and the

---

[1] An in terrorem, or no-contest, clause is "[a] provision designed to threaten one into action or inaction; esp., a testamentary provision that threatens to dispossess any beneficiary who challenges the terms of the will." Black's Law Dictionary (9th Ed. 2009).

alleged removal of personal property from [the decedent's] residence." The defendants' expert witness, who reviewed the materials that detailed the requests the siblings made of Gallant, testified that "the contentiousness [between the beneficiaries is] at a level I have only seen once in some forty-four years of this work." The plaintiff's expert witness conceded that the extensive quarrelling among the siblings made settling the estate "a very difficult matter." One of the strategies Gallant used to try to quell the siblings' animosity was to directly and unequivocally tell them the truth: their constant quarrelling was resulting in fees that were diminishing the estate.

The court noted that Gallant testified that his approach to dealing with the contentiousness of the siblings was to try to build consensus. Though consensus building was difficult and time-consuming, Gallant's rationale for taking this approach was that it ultimately would be beneficial to the estate because it would prevent costly litigation among the beneficiaries. For example, the threatened will contests, to which the court referred in its memorandum of decision, arose because the decedent had left wills in both Connecticut and the Bahamas. The plaintiff's brothers retained counsel and notified Gallant that they intended to challenge the validity of the wills. The court credited Gallant's uncontradicted testimony that such litigation could have consumed the entirety of the estate's assets.

To date, the Probate Court has awarded the defendants approximately $211,000 in fiduciary and attorney's fees relating to the settlement of the decedent's estate. The first payment, in the amount of approximately $91,000, compensated the defendants for work for the time period of January 28, 2008 to February 1, 2009. That disbursement was not contested at the time it was made, nor is it contested in this appeal. On March 9, 2010, the Probate Court, without conducting a hearing

on the record, awarded the defendants fiduciary and attorney's fees in the amount of approximately $120,000 for the time period of February 1, 2009 to January 31, 2010. The plaintiff appealed that second award to the Superior Court, claiming that it was unreasonable, excessive and in violation of the principles of *Hayward* v. *Plant*, supra, 98 Conn. 384–85. The plaintiff argued that, given the size of the estate, the defendant's legal and fiduciary fees should not exceed $100,000 in total, including the initial uncontested payment of $91,000. The court conducted a trial over the course of two days, and rendered a judgment in favor of the defendants. This appeal followed.

I

"Under [Connecticut] law an executor, administrator, trustee or guardian is entitled to a reasonable compensation for his services, depending upon the circumstances of the case." Id., 384. In *Hayward*, our Supreme Court set forth nine factors for the trial court to consider when determining the reasonableness of such compensation: (1) the size of the estate; (2) the responsibilities involved; (3) the character of the work required; (4) the special problems and difficulties met in doing the work; (5) the results achieved; (6) the knowledge, skill and judgment required of and used by the executors; (7) the manner and promptitude with which the estate has been settled; (8) the time and service required; and (9) any other circumstances which may appear in the case and are relevant and material to this determination. Id., 384–85.

When there is no record made before the Probate Court, the Superior Court, on appeal, must conduct a trial de novo. *Andrews* v. *Gorby*, 237 Conn. 12, 16, 675 A.2d 449 (1996). When a Superior Court reviews the reasonableness of fiduciary and attorney's fees awarded by the Probate Court, and no record was made before

the Probate Court, the Superior Court must apply the factors set forth in *Hayward* and make "an independent determination, with regard to the result reached by the [P]robate [C]ourt." (Internal quotation marks omitted.) Id.

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion." (Internal quotation marks omitted.) *Gianetti* v. *Norwalk Hospital*, 304 Conn. 754, 815, 43 A.3d 567 (2012). Likewise, when we review a trial court's decision to award fees to an executor, administrator or trustee, "[t]he test is, has the court exercised a reasonable discretion, or, in other words, is its exercise so unreasonable as to constitute an abuse of discretion." *Hayward* v. *Plant*, supra, 98 Conn. 382. "This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Gianetti* v. *Norwalk Hospital*, supra, 815. When determining whether the trial court used the appropriate legal standard, our review is plenary. *Costantino* v. *Skolnick*, 294 Conn. 719, 730, 988 A.2d 257 (2010).

In this appeal, the plaintiff first claims that the Superior Court did not follow the mandate of *Andrews* v. *Gorby*, supra, 237 Conn. 16, and make an independent determination of the reasonableness of the awarded fees in light of the factors set forth in *Hayward* v. *Plant*, supra, 98 Conn. 384–85. Our review of whether the court followed *Andrews* is a question of whether the court

used the proper legal standard and, therefore, requires plenary review. The question of whether the court properly applied the factors in *Hayward* to the facts of this case and determined that the defendants were entitled to receive compensation is reviewed under an abuse of discretion standard.

With regard to the question of whether the court used the proper legal standard, we conclude that the court made an independent determination pursuant to *Andrews* after a two day trial. It produced a written memorandum of decision, which provided in part: "When applying the standards set forth in *Hayward v. Plant*, the court finds that the fees charged by the defendants are reasonable under the unusual circumstances presented here." There is no error in the legal standard applied by the court.[2]

With regard to the determination of whether, under the facts of this case, the defendants were entitled to fiduciary and attorney's fees in the amount of approximately $120,000—in addition to the prior uncontested

---

[2] The plaintiff claims that the court did not follow *Andrews* because it did not make an independent determination with regard to certain facts, such as whether Gallant followed the correct course of action by not aggressively lowering the price on the Bahamian property in an attempt to facilitate a quicker sale. Specifically, the plaintiff criticizes the court for crediting Gallant's testimony and determining that "[Gallant] was ultimately in a better position than anyone else to know [the totality of the circumstances]. . . . Gallant acted in a manner which, in his opinion, protected the estate, the trust and its beneficiaries." Ironically, the plaintiff argues that court violated *Andrews* by deferring to Gallant's opinion, and, instead, should have credited the opinion of her expert who testified that he would have reduced the listing price of the property every sixty to ninety days until it sold. The court was confronted with differing opinions and, after listening to both parties' arguments, made an independent determination that Gallant's actions were proper, noting: "Gallant's testimony with respect to the listing and handling of the issues surrounding the Bahamian property is credible and bolstered by the fact of his experience in other estates which have held real estate in the Bahamas." Crediting certain witnesses in light of the totality of the circumstances does not run afoul of *Andrews*; rather it is exactly what *Andrews* prescribes.

award of fiduciary and attorney's fees in the amount of approximately $91,000—the plaintiff argues that the court did not properly consider two *Hayward* factors: the results achieved in the settlement of the decedent's estate (results factor), and the promptitude with which the estate has been settled (promptitude factor). The principal question, therefore, is whether the court abused its discretion by determining that the facts of this case, as applied to results and promptitude factors, support a conclusion that the defendants are entitled to fiduciary and attorney's fees in the amount submitted to the Probate Court.

At trial, the plaintiff conceded that the billing records submitted by the defendants to the Probate Court accurately reflected the work that the defendants performed, but she advanced an argument that much of that work was unnecessary and could have been avoided had Gallant been more decisive in his actions with regard to the estate. Her primary argument is that Gallant's inability to sell the Bahamian property in a timely fashion and the erosion that occurred on the property during the time the property was for sale support a reduction of fiduciary and attorney's fees under *Hayward*'s results and promptitude factors. The court, however, was presented with evidence of the siblings' contentiousness and litigious nature, and determined that "an extensive amount of time was spent by Gallant in dealing with issues raised by the beneficiaries." Among the myriad issues created by the beneficiaries included bickering about the listing price of the Bahamian property, a dispute which impacted the promptitude with which Gallant could dispose of the property. While the plaintiff argues that Gallant should have acted unilaterally and more decisively when the three siblings were unable to reach a consensus, the court noted that Gallant, through an approach whereby he sought to build a consensus among the siblings, "was able to avoid

the filing of a will contest in the state of Connecticut and ultimately avoid a will contest in the Bahamas," which could have consumed the entirety of the estate's assets. The court, therefore, did not abuse its discretion in considering Gallant's ability to prevent the siblings from depleting the assets of the estate through needless litigation, or in considering the time spent by Gallant dealing with issues created by the beneficiaries, as this factual predicate was critical to addressing the results and promptitude factors pursuant to *Hayward*. Likewise, the court did not abuse its discretion in rendering judgment for the defendants and approving the fiduciary and attorney's fees as submitted to the Probate Court after considering the factual circumstances of this case in light of the nine *Hayward* factors.

## II

The plaintiff next claims that this court should create a new law proclaiming that the fiduciary and attorney's fees awarded to an executor or a trustee are limited in proportion to the size of the estate. The inspiration for this proposed change in the law is *In re Estate of Bernadine Ordner and Estate of William Ordner*, Probate Court, district of Stratford (July 11, 2008) (22 Quinnipiac Prob. L.J. 104 [2009]). In that opinion, the Probate Court, *Hon. F. Paul Kurmay*, retroactively reduced by one-third the hourly fiduciary and attorney's fees rates that a law firm charged in the settlement of an estate because "[t]he [e]state simply cannot afford them." Id., 114. In that case, the fees were nearly 50 percent of the estate and Judge Kurmay reduced them to approximately 28 percent. He suggested that "[t]here simply must be a practical limit to the percentage of an estate claimed by attorney's and fiduciary fees," and provided a process for achieving this objective: "When it appears that the fees of an attorney will be so high as to substantially erode the distributive share of the beneficiaries, it is the duty of the attorney to bring the

dilemma to the [c]ourt's attention, so that the [c]ourt may bring it to the attention of the estate beneficiaries. . . . After a hearing, the parties and the [c]ourt must decide whether the disproportionately high attorney's fees are worth it—whether the continued incursion of additional fees will have a beneficial effect upon the bottom line, the distributive share . . . ." Id., 113.

We decline to adopt Judge Kurmay's recommended procedure, which was born out of a case that "involved more contentiousness, disputes, arguments, correspondence, pleadings, memoranda of law and judicial hearings than any other decedent's estate [that Judge Kurmay had encountered] in [his] thirty years on the [b]ench." Id., 108–109. While we do not discourage an attorney from communicating with the court and/or the beneficiaries of an estate if the fees are escalating beyond what is typical in an estate settlement, we decline to require the procedural steps that Judge Kurmay suggests. Further, we do not accept the plaintiff's suggestion to adopt as law Judge Kurmay's opinion, which allows for the retroactive reduction of fiduciary and attorney's fees on the basis of the size of the estate alone. Size of the estate is one of the factors our Supreme Court set forth in *Hayward*, and as such, it should be considered by a court in determining whether fiduciary and attorney's fees are reasonable. It is, however, one of nine factors. Elevating it to the dispositive level suggested by the plaintiff and Judge Kurmay would run afoul of the sound holistic approach to reasonableness our Supreme Court set forth nearly a century ago.

The judgment is affirmed.

In this opinion the other judges concurred.