******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZBIGNIEW S. ROZBICKI *v.* EUGENE
GISSELBRECHT ET AL.
(AC 36267)

Gruendel, Lavine and Mullins, Js.

*Argued December 8, 2014—officially released February 10, 2015*

(Appeal from Superior Court, judicial district of
Litchfield, Dooley, J.)

*Zbigniew S. Rozbicki*, self-represented, the appellant (plaintiff).

*J. Michael Sconyers*, with whom, on the brief, was *Ruth Nadeau Dwyer*, for the appellees (defendants).

*Opinion*

LAVINE, J. The self-represented plaintiff, Zbigniew S. Rozbicki, an attorney, appeals from the judgment of the trial court, following his appeal to that court from the decree issued by the judge of probate for the district of Torrington pursuant to General Statutes § 45a-186. On appeal to this court, the plaintiff claims that the trial court (1) lacked a factual basis on which to make its findings, (2) failed to award him the full compensation requested, and (3) failed to consider the parties' stipulation regarding the value of certain securities. We affirm the judgment of the trial court.

The trial court made the following findings of fact. Kathleen Gisselbrecht (decedent) was employed by the plaintiff in his law office for many years and named him the executor of her estate. Following her death in 2007, the decedent's will was entered into probate, and the plaintiff was appointed the executor of her estate. The defendants are the decedent's siblings and beneficiaries under her will.[1] During the administration of the decedent's estate, the plaintiff kept the defendants informed of the proceedings. A disagreement between the parties arose over the proceeds of a certain life insurance policy. Under article III of the decedent's will, the proceeds of the insurance policy were to be used to pay the outstanding balance of the mortgage on her home and to repay a $20,000 loan from the plaintiff. The contract of insurance, however, named her sister, Ann Marie Rozsas, and her brother, Edward Gisselbrecht, the sole beneficiaries of the insurance. The insurance proceeds, therefore, were outside of the estate. See *Sigal* v. *Hartford National Bank & Trust Co.*, 119 Conn. 570, 574, 177 A. 742 (1935).

In June, 2007, Rozsas and Gisselbrecht received the insurance proceeds with the assistance of the plaintiff. The plaintiff, subsequently, demanded that Rozsas and Gisselbrecht return the insurance proceeds to the estate. Rozsas and Gisselbrecht refused. Rozsas explained by letter, dated September 5, 2007, that the decedent had changed the designated beneficiaries of her life insurance policy from her estate to Rozsas and Gisselbrecht because her home had enough equity to cover the outstanding balance of her mortgage and to repay the loan from the plaintiff.

In February, 2008, the plaintiff filed an Application for Approval of Payments with the Probate Court in which he requested payment of legal fees for previously having represented the decedent in a personal injury action. The defendants, however, were unaware of this debt, and the plaintiff failed to discuss this fee with them prior to seeking reimbursement. Within weeks of learning that the defendants planned to contest his request for this legal fee, the plaintiff reasserted his claim that the insurance policy proceeds must be

returned to the estate. As a result, in August, 2008, the plaintiff filed a lawsuit (civil suit) against Rozsas and Gisselbrecht for the return of the life insurance proceeds.

On June 10, 2009, pursuant to General Statutes § 45a-242, the Probate Court removed the plaintiff as executor of the estate for cause. Upon the plaintiff's removal as executor, the Probate Court ordered the plaintiff to file a final accounting. After the Probate Court rejected his five prior accountings as incomplete or noncompliant, the plaintiff filed the subject final accounting on March 26, 2010. In the plaintiff's final accounting, he sought certain fiduciary and attorney's fees for services he claimed to have rendered including: fiduciary fees in the amount of $38,417.50; attorney's fees in connection with the civil suit in the amount of $22,605; and attorney's fees related to the sale of the decedent's home in the amount of $2860. The defendants objected to the plaintiff's final accounting and filed a petition for surcharges.

The Probate Court awarded a substantially lesser amount of fiduciary and attorney's fees than the plaintiff had requested. Specifically, it awarded the plaintiff a fiduciary fee of $5000 and attorney's fees related to the sale of the decedent's home in the amount of $1020. In addition, the Probate Court granted several of the defendants' requested surcharges including: $225 for expenses related to the grievance complaint filed against the plaintiff; $2000 for the attorney's fees of James Townsend, who represented the plaintiff when the Probate Court removed him as executor; $623.75 for the attorney's fees of William Barrante, who represented the plaintiff in the civil suit; $764.97 for the transcript of the civil suit and; $3134.23 for the loss on sale of Webster Financial stock securities. The plaintiff appealed from the Probate Court's decree to the trial court.

We first address the trial court's standard of review on appeal from the Probate Court. "An appeal from a Probate Court to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court." (Citations omitted; internal quotation marks omitted.) *State* v. *Gordon*, 45 Conn. App. 490, 494, 696 A.2d 1034 cert. granted on other grounds, 243 Conn. 911, 701 A.2d 336 (1997) (appeal dismissed October 27, 1998).

Additionally, the trial court must conduct a trial de novo. *In re Probate Appeal of Cadle Co.*, 152 Conn. App. 427, 439, 100 A.3d 30 (2014). "An appeal from probate does not vacate the decree appealed from nor does it

lift the entire cause from the probate court into the superior court. On the contrary, *it leaves the entire matter as it was in the probate court, there to be continued with and completed according to law, presenting in the meanwhile to the superior court for redetermination, after a retrial of the facts, the special and limited issues embraced within the particular decree appealed from.*" (Emphasis in original; internal quotation marks omitted.) Id., 440.

Over the course of three days, the trial court heard the case de novo. In its corrected memorandum of decision,[2] dated February 10, 2014, the court awarded a lesser amount of fiduciary and attorney's fees than the plaintiff requested and sustained the majority of surcharges requested by the defendants. Specifically, the court awarded fiduciary fees in the amount of $2000, attorney's fees in the amount of $1500 related to the sale of the decedent's home, and denied attorney's fees for the civil suit. Prior to the trial, the defendants requested surcharges for the following: the loss of value in Webster Financial stock securities; the trial court filing fee for the civil suit; attorney's fees for Townsend; attorney's fees for Barrante; the fee for the transcript of the civil suit and; the Probate Court filing fees. During the trial de novo, the defendants withdrew their request for a surcharge for the loss in value of Webster Financial stock securities. The court sustained surcharges for the trial court filing fee for the civil suit, attorney's fees for Townsend, attorney's fee for Barrante, and the fee for the transcript of the civil suit, but denied a surcharge for the Probate Court filing fees. The plaintiff then filed this appeal. Additional facts will be set forth as necessary.

I

The plaintiff first claims that there was insufficient evidence to support the trial court's findings of fact as related to the civil suit.[3] The plaintiff specifically takes issue with the court's finding that the civil suit was a "personal vendetta . . . which was the basis for a blanket denial of the plaintiff's fees and expenses, specifically the attorney's fees incurred in the prosecution of [the] civil suit."[4] We disagree with the plaintiff.

"The following standard of review is applicable to sufficiency of the evidence claims. [W]e must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . [W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . . We do not examine the record to determine whether the trier of fact could have reached

a conclusion other than the one reached . . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . . [E]vidence is not insufficient . . . because it is conflicting or inconsistent. [The trier of fact] is free to juxtapose conflicting versions of events and determine which is more credible." (Citations omitted; internal quotation marks omitted.) *Masse* v. *Perez*, 139 Conn. App. 794, 797–98, 58 A.2d 273 (2012), cert. denied, 308 Conn. 905, 61 A.3d 1098 (2013).

In the present case, the court found that "the evidence produced at trial established conclusively that the plaintiff's motivation in bringing and pursuing the litigation against Ms. Rozsas and Mr. Gisselbrecht was to punish, harass, annoy and to retaliate against the decedent's family members." That finding is supported by the timing of the civil suit, which commenced immediately after the defendants questioned the plaintiff's request for attorney's fees for a personal injury case in which he represented the decedent years ago. The court further found that "the plaintiff was operating in contravention to the wishes of the beneficiaries; was openly hostile to their respective positions and was clearly pursuing a personal vendetta against the decedent's family members."

The plaintiff argues that the court's finding that the civil suit was a "personal vendetta" was unjustified on the facts, and he maintains that he commenced the civil suit in good faith as the executor. The plaintiff testified that it was his obligation to the estate to pursue such litigation. The trial court did not credit this testimony from the plaintiff and instead found that "his testimony on this issue was simply not credible . . . [and] [r]egardless [of] the conflicting positions as to the merits of the [civil suit], its purpose was not to vindicate rights the estate may have had . . . ." (Footnote omitted.) The court concluded that "[t]he [civil suit] was a personal vendetta for which the estate need not pay" and, therefore, denied attorney's fees for the civil suit and sustained the defendants' request for a surcharge.

In support of these findings, the court reviewed all of the evidence produced at trial before issuing its memorandum of decision. Footnote 3 of the court's memorandum of decision states in relevant part: "The court does not attempt to include in this decision all of the evidence relied upon in the court's factual findings. The court has considered all of the evidence admitted, and the reference to any subset of the evidence presented should not be construed as identifying the exclusive basis for the court's findings. Nor should the court's failure to identify or mention specific evidence give rise to an inference that such evidence has not been considered." There was evidence in the record that the plaintiff commenced the civil suit only after a rift formed between the decedent's family and him. The

plaintiff, alone, held the view that the insurance proceeds should pass through the estate and that a civil suit was necessary to protect the estate's interest. Yet none of the decedent's beneficiaries advanced this position nor pursued any entitlement to the insurance proceeds. We conclude, on the basis of our review of the record and the trial court's memorandum of decision, that viewed in the light most favorable to sustaining the judgment, there was sufficient evidence to support the trial court's findings.

The plaintiff argues that "[t]he lack of clarity in the court's findings is compounded by its argumentative advocacy and disregard for undisputed admissions and undisputed contrary evidence . . . ." The plaintiff, however, failed to seek an articulation of the evidentiary basis for the court's decision. See Practice Book § 66-5. "Unless the contrary appears in the record, we will presume that the trial court acted properly and considered applicable legal principles." *Bank of Boston Connecticut* v. *Avon Meadows Associates*, 40 Conn. App. 536, 543, 671 A.2d 1310, cert. denied, 237 Conn. 905, 674 A.2d 1329 (1996). Therefore, we must look to the record as a whole to determine whether the findings were supported by the evidence. We conclude that the court's factual findings are not clearly erroneous in light of the evidence in the whole record and the court's logical and thoughtful decision is not erroneous in law.

## II

The plaintiff next claims that the court erred in denying him the full compensation and fees he requested as the former executor of the decedent's estate. We disagree.

On appeal to the trial court, the plaintiff again requested compensation and fees for the performance of his duties as the former executor in his final accounting. Specifically, the plaintiff requested fiduciary fees, attorney's fees for the civil suit, and attorney's fees related to the sale of the decedent's home.

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . Likewise, when we review a trial court's decision to award fees to an executor, administrator or trustee, [t]he test is, has the court exercised a reasonable discretion, or, in other words, is its exercise so unreasonable as to constitute an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *McGrath* v. *Gallant*, 143 Conn. App. 129, 135, 69 A.3d 968 (2013).

"Under [Connecticut] law an executor, administrator, trustee or guardian is entitled to a reasonable compensation for his services, depending upon the circumstances of the case." (Internal quotation marks omitted.) Id., 134. In *Hayward* v. *Plant*, 98 Conn. 374, 384–85, 119 A. 341 (1923), our Supreme Court set forth

nine factors for the trial court to consider when ruling on the reasonableness of fees awarded to an executor: (1) the size of the estate; (2) the responsibilities involved; (3) the character of the work required; (4) the special problems and difficulties met in doing the work; (5) the results achieved; (6) the knowledge, skill and judgment required of and used by the executors; (7) the manner and promptitude with which the estate has been settled; (8) the time and service required; and (9) any other circumstances which may appear in the case and are relevant and material to this determination.

In its memorandum of decision, the trial court considered the nine factors enunciated in *Hayward*. It found that the estate was neither large nor complicated and the executor's responsibilities were routine, which resulted in the plaintiff being prepared to finalize the estate only months after the will was submitted to probate. The court did not find that the plaintiff undertook any special responsibilities or performed extraordinary tasks for the estate. See *In re Andrews' Appeal from Probate*, 78 Conn. App. 441, 450, 826 A.2d 1267 (2003). The tasks the plaintiff undertook were ministerial in nature and did not require the specialized knowledge of a law degree. The court found that the administration of the estate was simple and routine, but that the plaintiff "engaged in conduct not to promptly settle the estate but to prolong, delay and deplete the estate." The evidence before the court demonstrated that the plaintiff achieved few results for the decedent's estate, and the trial court appropriately considered the plaintiff's "failings" in regard to his role as the executor. Accordingly, the trial court carefully considered the *Hayward* factors in its analysis of the facts and its denial of the compensation and fees requested by the plaintiff.

The trial court also considered the reasonableness of the amount requested for a fiduciary fee. The court found improper and error-riddled accounting in the plaintiff's fee bill. The plaintiff requested a fiduciary fee in excess of 10 percent of the gross value of the estate and included items that were " 'double billed.' " In addition, the bill for fiduciary fees included dated entries that occurred after the plaintiff had been removed as the executor of the decedent's estate. The court, ultimately, awarded the plaintiff $2000 for his fiduciary services. Having reviewed the record and the trial court's memorandum of decision, we conclude that the court properly applied the *Hayward* factors and did not abuse its discretion in awarding a fiduciary fee in a lesser amount than that requested by the plaintiff.

The plaintiff, in addition to the fiduciary fees, sought attorney's fees he incurred in the civil suit and related to the sale of the decedent's home. The court, once again, considered the *Hayward* factors in determining whether or not attorney's fees should be awarded. It found that "the evidence produced at trial established

conclusively that the plaintiff's motivation in bringing and pursuing the [civil suit] was to punish, harass, annoy and to retaliate against the decedent's family members." The court further concluded that the plaintiff's testimony was not credible and thus denied his request for $22,605 in attorney's fees for the civil suit.

The plaintiff's second request for attorney's fees was submitted to the trial court by invoice in regard to the sale of the decedent's home. The court found that the invoice included "[a] fair number of entries for time spent on the real estate closing [that] appear to be activities of a fiduciary, and not those that the real estate lawyer would normally undertake." Because the court already had compensated the plaintiff for his duties as the executor, the court appropriately awarded $1500 in attorney's fees related to the sale of the decedent's home. Our review of the record and the trial court's memorandum of decision discloses that the trial court properly applied the *Hayward* factors and did not abuse its discretion in denying attorney's fees for the civil suit and properly awarded attorney's fees related to the sale of the decedent's home.

### III

The plaintiff's final claim is that the court failed to consider the parties' stipulation regarding a surcharge related to the decreased value of certain Webster Financial stock securities. We disagree.

On appeal to the trial court, the defendants requested a surcharge for $3134.23 for the loss in value of Webster Financial stock securities. On the first day of trial, "the defendants made a decision to withdraw their request for a surcharge regarding the stock, thereby leaving that portion of the plaintiff's accounting unopposed by the defendants." After the defendants' withdrawal on the record, the plaintiff asked that the court incorporate the withdrawn surcharge into its decision. The court disagreed and stated, "Well . . . it's a trial de novo . . . they requested that surcharge, they are no longer requesting that surcharge, and so as part of your accounting, it will remain." The plaintiff then answered, "Thank you."

In this appeal, the plaintiff argues that the trial court erred by not incorporating the withdrawn surcharge for the stock into its judgment. Specifically, the plaintiff states that the parties had a stipulation concerning the surcharge and "the [trial court's] decision . . . ignores the parties' stipulation and the Probate Court order for surcharge, which should have been reversed on appeal." The record discloses, however, that the trial court accepted the defendants' withdrawal of the surcharge and explained to the plaintiff that it did not need to incorporate the withdrawn surcharge into its judgment. Furthermore, the plaintiff has failed to show that he has been harmed by the trial court's exclusion of the

withdrawn surcharge in its judgment. We agree with the trial court and, therefore, his claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendants originally included: Eugene M. Gisselbrecht, Edward Gisselbrecht, Richard Albrecht, Sally Albrecht, Christopher Rozsas, Claudia Urian, Robert Urian, and Christina Falzarano. We note that the trial court subsequently granted the defendants' motion to remove Eugene M. Gisselbrecht as a party to this action.

[2] The trial court's February 10, 2014 memorandum of decision corrected a typographical error in the amount of attorney's fees sought by the plaintiff. Accordingly, any references in this opinion to the trial court's decision are to the corrected memorandum of decision.

[3] The plaintiff alleges within his first claim that "the trial court failed to apply fundamental principles of law governing an executor's duty." The plaintiff, in essence, attempts to reargue the merits of the civil suit. In its memorandum of decision, the trial court emphasized that "[t]his appeal is limited to the Probate Court's determination on the final account and the estate's claimed surcharges," and that any attempt by the plaintiff to relitigate the civil suit would not be permitted. We agree that the civil suit was not before the trial court and was not part of its judgment.

[4] The plaintiff contests only the surcharge for the civil suit filing fee. He does not contest any of the other surcharges sustained by the trial court or the factual basis for the trial court's award for an executor fee and attorney's fees for the sale of the decedent's home. The plaintiff's factual finding claim rests on the trial court's denial of attorney's fees and cost for the civil suit.