******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

ADAM KHAN ET AL. *v.* LISA C. KHAN ET AL.

LISA C. KHAN *v.* AHMED KHAN
(AC 46664)

Elgo, Clark and Seeley, Js.

*Syllabus*

The named defendant in the first action and the plaintiff in the second action, L, the trustee of a family trust established by her former husband as grantor, appealed from the trial court's judgments in two separate actions that were consolidated for trial. In the first action, the court rendered judgment for the plaintiffs, several of L's children who were beneficiaries of the trust, on their claims of, inter alia, breach of fiduciary duty with respect to L's termination of an insurance policy held by the trust and the transfer of the policy proceeds to her personal bank and investment accounts. In the second action, the trial court denied L's claim for indemnification under the trust agreement for damages awarded in the first action. L claimed, inter alia, that the trial court improperly concluded that she was liable for wilful misconduct. *Held*:

The trial court properly concluded in the first action that L breached her fiduciary duty to the trust, as the evidence was sufficient to support the court's findings that L knowingly misrepresented to the insurance company that the bank account to which she transferred the policy proceeds was titled in the name of the trust when she knew that she was directing the funds to her personal account, that L did not advise the plaintiffs or the grantor that the policy had been terminated or that the policy proceeds had been invested in her personal accounts, and that L opened a trust account for the policy proceeds only after being advised by the grantor's attorneys that she had improperly transferred the policy proceeds to her personal accounts, and, thus, the court's resulting damages award was not clearly erroneous.

The trial court's findings supported its conclusion in the first action that L's conduct was wilful, as, although the court found that L did not have the requisite intent to deprive the plaintiffs of the policy proceeds for purposes of the statutory theft count in their complaint, that finding did not require a conclusion that L's conduct was not wilful.

L could not prevail on her claim that the trial court erroneously awarded punitive damages to the plaintiffs in the first action because the court found that she did not have the requisite intent to deprive the plaintiffs of the policy proceeds for purposes of the statutory theft count, as that finding did not compel a conclusion that L's conduct was not wilful and the court made numerous findings showing that L exhibited a reckless indifference

to the rights of the plaintiffs or an intentional and wanton violation of those rights.

The trial court in the first action did not improperly remove L as a trustee or act contrary to the terms of the trust in establishing procedures regarding the appointment of a successor trustee, as the court's findings regarding L's removal as trustee were supported by the record and supported the court's conclusion that, pursuant to statute (§ 45a-499ww), removal was necessary to prevent future harm to the trust, and the court properly applied the provisions of the statute (§ 45a-499uu) governing the procedures to appoint a successor trustee.

The trial court in the first action did not abuse its discretion in denying L's request for a trustee fee, as the court's factual findings were supported by the record and were not clearly erroneous, and the court properly considered the factors set forth in *Hayward* v. *Plant* (98 Conn. 374) in making its determination.

The trial court in the second action properly concluded that L was not entitled to indemnification under the circumstances of this case, as her conduct did not fall within the parameters of the indemnification clause in the trust.

Argued February 10—officially released August 12, 2025

*Procedural History*

Action, in the first case, to recover damages for, inter alia, breach of fiduciary duty, and for other relief, and action, in the second case, seeking indemnification for the plaintiff trustee pursuant to the terms of a certain trust agreement, and other relief, brought to the Superior Court in the judicial district of Hartford, where the cases were consolidated for trial to the court, *Rosen, J.*; judgment for the plaintiffs in the first case and judgment for the defendant in the second case, from which the named defendant in the first case and the plaintiff in the second case appealed to this court. *Affirmed.*

*Lisa C. Khan*, self-represented, the appellant (named defendant in the first case, plaintiff in the second case).

*Carmine Perri*, with whom, on the brief, was *Andrew R. Veale*, for the appellees (plaintiffs in the first case, defendant in the second case).

*Opinion*

ELGO, J. These consolidated appeals involve a family trust established by the grantor, Ahmed M. Khan (grantor), and Lisa C. Khan (Khan), who is a defendant in the first action (trust action)[1] and the plaintiff in the second action (indemnification action). Khan appeals from the judgments of the trial court in favor of the plaintiffs in the trust action[2] and the grantor in the indemnification action. On appeal, Khan claims that the court improperly (1) found that she had breached her fiduciary duty, (2) concluded that she was liable for wilful misconduct, (3) ordered her to pay punitive damages to the plaintiffs, (4) removed her as the trustee of the trust, (5) failed to award her a reasonable trustee fee, and (6) failed to uphold the plain and unambiguous language of the trust's indemnification clause. We affirm the judgments of the trial court.

The following facts and procedural history, as set forth by the trial court or as undisputed in the record, are relevant to our resolution of this appeal. On April 19, 2007, the grantor and Khan, who were married, entered into an agreement establishing the Khan Family Trust (trust). Khan was the sole trustee and the primary beneficiary of the trust and the six children of the grantor and Khan were the eligible beneficiaries. In

---

[1] Khan was named as a defendant individually and as trustee of the Khan Family Trust in the trust action. Aaron Khan and Alexander Khan, who are also children of the grantor and Khan, also were named as defendants in the trust action because of their potential interests in the trust. Aaron Khan and Alexander Khan did not appear in the trial court. In her amended appeal form, Khan, who was a licensed Connecticut attorney, listed herself, Alexander Khan and Aaron Khan as the appellants. In her appellate briefs, however, Khan has listed only herself as the appellant, and she retired as an attorney on May 27, 2025.

[2] The plaintiffs in the trust action are Adam Khan; Eleanor Khan; Emma Khan, now known as Emmett Khan; and Erica Khan. They are all children of the grantor and Khan, and we refer to them in this opinion as the plaintiffs. At the time this action was commenced, Eleanor, Emmett and Erica, all minors, appeared through their father, the grantor, as their next friend.

connection with the establishment of the trust, Khan purchased a $2 million whole life insurance policy (policy) on the grantor from Northwestern Mutual Life Insurance Company (Northwestern Mutual). The policy paid annual dividends in the form of interest accrual at an annual rate of 3.5 percent. The grantor initially was the named insured and owner under the policy; the trust thereafter became the owner of the policy.

The annual premium for the policy was $36,210. The grantor paid the policy premiums until 2012, when the grantor and Khan divorced.[3] To ensure that the policy remained in effect for the benefit of her children, Khan thereafter paid the monthly policy premiums from 2013 until 2018, in an amount totaling $220,624.58. Khan considered each monthly premium payment to be a loan from her to the trust.

On October 5, 2018, Khan submitted a form titled "Surrender of Policy for Cash Value/Term" to Northwestern Mutual, instructing Northwestern Mutual to electronically transfer the net cash surrender value of the policy to her personal bank account at Farmington Bank, now known as People's United Bank (People's United). Section 3 of the policy surrender form prohibits disbursements to a trustee in his or her individual capacity.[4]

Northwestern Mutual thereafter issued a confirmation of policy surrender, effective October 6, 2018, confirming the electronic transfer of the policy's net proceeds in the amount of $377,264.13 "to the credit of

---

[3] We note that Khan has filed a separate appeal from certain postjudgment orders entered on February 16, 2024, in the dissolution action. That appeal is pending in this court. See *Khan* v. *Khan*, Connecticut Appellate Court, Docket No. 47435 (appeal filed March 7, 2024).

[4] The "Surrender of Policy for Cash Value/Term" form provides in relevant part: "Disbursements from trust owned contracts will be made payable to either the insured, owner or payer so long as the trustee is not the payee in his/her individual capacity."

Farmington Bank . . . for deposit to [the] checking account number . . . of [the] Khan Family Trust." The policy proceeds, however, were not transferred to a trust account; they were posted in Khan's personal account at People's United on October 10, 2018, resulting in an account balance of more than $400,000. On October 11, 2018, Khan made two transfers, totaling $400,000, from her People's United account to her personal brokerage accounts at Fidelity Investments (Fidelity). She thereafter purchased a number of securities during the period from October 12, 2018, to May 10, 2019, with a value of approximately $380,000.

Khan did not inform the children or the grantor that she had terminated the policy or that the proceeds of the policy had been invested in her personal accounts. In December, 2019, after being informed by the grantor's attorneys that her conduct was improper, Khan opened a trust account at Fidelity in the name of the trust and funded it with $180,866.62 that she had transferred from her personal brokerage accounts.

In April, 2020, the plaintiffs commenced the trust action against Khan claiming breach of fiduciary duty, conversion, statutory theft pursuant to General Statutes § 52-564,[5] and imposition of a constructive trust due to Khan's alleged mismanagement of trust assets. In the operative complaint, the plaintiffs alleged that Khan improperly deposited the proceeds of the trust, specifically, the cash surrender value of the policy, into her personal account.[6] The plaintiffs sought as relief money

[5] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[6] Although the operative complaint in the trust action, filed on August 5, 2021, contains the same four counts as the original complaint, the plaintiffs withdrew their allegation that Khan had breached her fiduciary duty by surrendering the life insurance policy. Instead, the plaintiffs alleged that she had breached her duty by distributing the cash value to herself without authorization from an independent trustee.

damages, common-law punitive damages, treble damages, the removal of Khan as a trustee and the appointment of a successor trustee, and imposition of a constructive trust, as well as attorney's fees, costs and interest.

Khan filed an answer in the trust action denying the material allegations of the complaint. She also filed a special defense that asserted, in part, that she had the authority to surrender the policy for its cash value pursuant to the terms of the trust. Further, she asserted that, despite having no obligation to pay the policy premiums from 2013 to 2018, she did so because her children were young enough that the potential of the death benefit was worth the substantial cost of the annual premium. According to Khan, the policy premiums that she paid after the grantor stopped paying the premiums were a loan to the trust. The plaintiffs filed a reply to Khan's special defense.

In May, 2021, Khan commenced the second action, the indemnification action against the grantor, claiming that the actions she took regarding the policy were within the scope of powers identified in the trust as "Insurance Powers," including the powers to "surrender any policy for its cash value," to "borrow money for any purpose," and "to rely on others to pay [premiums], with no obligation . . . to make such payments or take any action to keep any policy in force . . . ." She sought a declaration that, if she were found liable to the plaintiffs in the trust action, the grantor was required to indemnify her and hold her harmless for any damages the plaintiffs recover. Khan also sought an order that the grantor reimburse her for attorney's fees and expert fees incurred in defending the trust action. The grantor filed an answer and special defenses asserting that Khan had breached the implied covenant of good faith and fair dealing and had unclean hands. Khan filed a reply to the special defenses.

The trust action and the indemnification action were consolidated and tried to the court, *Rosen, J.*, in August, 2022. On May 23, 2023, the court issued one memorandum of decision for both cases, finding in favor of the plaintiffs in the trust action on their claims of breach of fiduciary duty, conversion and imposition of constructive trust and in favor of Khan on the plaintiffs' claim of statutory theft. As to the statutory theft count, the court found that, although Khan's conduct was improper, the plaintiffs did not prove that she had the requisite intent to deprive the plaintiffs of the policy proceeds. The court further ordered that Khan be removed as trustee upon the appointment of a successor trustee. The court found in favor of the grantor with respect to Khan's indemnification action.

In the trust action, the court awarded the plaintiffs both money damages and prejudgment interest totaling $295,738.67 but credited against that amount the $220,624.58 it found that Khan loaned to the trust between 2013 and 2018, resulting in a net damage award to the plaintiffs of $75,114.09.[7] It stated that it would conduct a hearing at a later date to appoint a successor trustee, at which time it would address the plaintiffs' claims for attorney's fees, costs, and offer of compromise interest.

Khan filed a motion to reargue in the indemnification action, which the court denied. Khan also filed a motion to reargue in the trust action, which the court granted in part, stating: "The court will issue a corrected memorandum of decision with respect to the calculation of

---

[7] In its May 23, 2023 memorandum of decision, the court stated that Khan had loaned the trust $217,260, resulting in a net damage award to the plaintiffs of $78,478.67. In its July 25, 2023 corrected memorandum of decision, the court changed the amount that Khan loaned to the trust from $217,260 to $220,624.58, thus changing the net damage award from $78,478.67 to $75,114.09.

the monthly loans for payment of the insurance policy premiums and the resulting damages award. The court will hear argument on [Khan's] contention that she remained the primary beneficiary of the [trust] after her divorce from the grantor. The remainder of [Khan's] motion to reargue is denied.''

The court issued a corrected memorandum of decision on July 25, 2023, in which it corrected its prior decision to reflect that Khan was the primary beneficiary of the trust, and the children are the eligible beneficiaries.[8] The court also corrected the amount that Khan loaned to the trust from $217,260 to $220,624.58. See footnote 7 of this opinion. Additionally, the court entered an order on July 25, 2023, awarding to the plaintiffs $182,374.50 in attorney's fees and $12,785.27 in nontaxable costs as common-law punitive damages and $791.83 as costs.[9] This appeal followed.

In our consideration of this appeal, we first address Khan's claims in the trust action. We then consider Khan's claim in the indemnification action.

## I

## THE TRUST ACTION

## A

Khan first claims that the trust suffered no damages as a result of her conduct and, therefore, the court

---

[8] The original memorandum of decision stated: "Upon the entry of the divorce decree [Khan] ceased to be a beneficiary under the trust, and the children became the trust's sole beneficiaries."

[9] The court noted that the total amount of the judgment in favor of the plaintiffs and against Khan was $370,406.85. This figure included the damages award of $75,114.09 as reflected in the trial court's corrected memorandum of decision, interest in the amount of $99,341.16, punitive damages in the amount of $195,159.77 and costs of $791.83. Because that amount was less than the offer of compromise in the amount of $377,000, the court did not award offer of compromise interest.

improperly concluded that she had breached her fiduciary duty to the trust. We disagree.[10]

Before addressing Khan's claims on appeal, we first set forth the applicable standard of review and relevant legal principles. "A trustee owes a fiduciary duty to administer the trust in the interest of the beneficiaries, and that duty commences when the trustee accepts the trusteeship. . . . The trustee's administration of the trust must comport with her duties of loyalty and prudence. . . . [I]n order to allege a claim against a trustee for breach of fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary relationship, giving rise to a duty, (2) breach of that duty, (3) causation, and (4) damages. . . . A breach of fiduciary duty claim presents a mixed question of law and fact. Accordingly, we review the court's factual findings for clear error and conduct a plenary review of the court's ultimate conclusion as to whether the [defendant] proved that [she] did not breach [her] fiduciary duty to the [plaintiffs]. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"In determining whether the court's decision was clearly erroneous, we must examine the court's decision in the context of the heightened standard of proof imposed on a fiduciary. . . . Once a fiduciary relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of proof of fair preponderance of

---

[10] The trial court awarded damages to the plaintiffs on their claims of breach of fiduciary duty, conversion and imposition of a constructive trust. We, therefore, consider the trial court's memorandum of decision regarding all these counts in our consideration of Khan's claim regarding damages.

the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence. . . . The construction of a trust instrument presents a question of law to be determined in the light of facts that are found by the trial court or are undisputed or indisputable.” (Citations omitted; internal quotation marks omitted.) *Spinnato* v. *Boyd*, 231 Conn. App. 460, 477–78, 333 A.3d 818 (2025).

“[A] plaintiff alleging a breach of fiduciary duty must show that any damages sustained were proximately caused by the fiduciary’s breach of his or her fiduciary duty.” (Internal quotation marks omitted.) *Barash* v. *Lembo*, 348 Conn. 264, 297, 303 A.3d 577 (2023). “Our standard of review applicable to challenges to damages awards is well settled. . . . [T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . [If], however, a damages award is challenged on the basis of a question of law, our review [of that question] is plenary.” (Internal quotation marks omitted.) *Mystic Oil Co.* v. *Shaukat, LLC*, 228 Conn. App. 147, 153, 323 A.3d 1094 (2024).

The following additional facts are necessary for the resolution of this claim. In its corrected memorandum of decision, the court found that “[b]y terminating the policy and transferring the policy proceeds into her personal accounts, [Khan] advanced her own interests to the plaintiffs’ detriment, resulting in damage to the plaintiffs proximately caused by her actions.” The court stated that “[Khan] acted without authorization (and without the plaintiffs’ knowledge and consent) in terminating the policy, transferring the policy proceeds into her personal banking and investment accounts, commingling those funds with her personal funds, and purchasing securities in her own name (at least in part

with the policy proceeds), all to the plaintiffs' detriment." The court further stated that Khan "knowingly misrepresented to Northwestern Mutual that the bank account to which she transferred the policy's proceeds was titled in the name of the trust, when she knew that she was directing the funds to her personal account. [Khan] then transferred those funds to her personal accounts at Fidelity. It is unclear whether she used the policy proceeds to purchase various securities, given that she had substantial holdings before she transferred the policy proceeds to her personal accounts."

In its decision, the court explained, in detail, how it calculated the award of damages and the evidence on which the award was based. Specifically, it awarded damages to the plaintiffs on the first, second and fourth counts of the complaint in the amount of $196,397.51. This figure represented the difference between the $377,264.13 in policy proceeds that Khan had improperly transferred to her personal account and the $180,866.62 that Khan transferred to the trust account at Fidelity.

The trial court next considered whether to award prejudgment interest on the award pursuant to General Statutes § 37-3a.[11] "The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court." (Internal quotation marks omitted.) *AAA Advantage Carting & Demolition Service, LLC* v. *Capone*, 221 Conn. App. 256, 292, 301 A.3d 1111, cert. denied, 348 Conn. 924, 304 A.3d 442 (2023), and cert. denied, 348 Conn. 924, 304 A.3d 442 (2023). The court found that an award of interest to the plaintiffs at the rate of 8 percent per annum was fair and equitable under § 37-3a, "given the wrongful detention of money

___

[11] General Statutes § 37-3a provides in relevant part that "interest at the rate of ten percent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . . "

by [Khan], the failure to fully fund the trust created at Fidelity with all of the policy proceeds, the inability to determine precisely which securities were purchased with the policy proceeds and their current value, and the fact that the plaintiffs were compelled to litigate this matter for several years, through trial, in order to obtain a judgment in their favor for the benefit of the trust."

The court next considered when the interest began to run. "The date the interest begins to run pursuant to § 37-3a is factual because it necessarily involves a determination of when the wrongful detention began." (Internal quotation marks omitted.) *AAA Advantage Carting & Demolition Service, LLC* v. *Capone*, supra, 221 Conn. App. 292–93. The court awarded interest at the rate of 8 percent per annum for two different time periods. It first awarded interest on the policy proceeds of $377,264.13 from October 6, 2018, when Khan misappropriated the policy proceeds, to December 5, 2019, when Khan created and funded the new account at Fidelity. The amount of interest for this time totaled $35,142.41.[12] The court next awarded interest from December 5, 2019, through the date of its original decision in this matter on May 23, 2023, in the amount of $64,198.75.[13] The total award of prejudgment interest, therefore, was $99,341.16. The court then added $99,341.16 in prejudgment interest to its award of damages of

[12] The court calculated the interest for this time period as follows: 8 percent of $377,264.13 equals $30,181.13 per year, or $82.69 per day, multiplied by 425 days for the period from October 6, 2018, to December 5, 2019, totaling $35,142.41.

[13] The court calculated the interest for this time period as follows: the total amount due to the plaintiffs as of December 5, 2019, was $412,406.54, which includes the policy proceeds of $377,264.13 plus $35,142.41 in interest. From this amount the court subtracted the $180,866.62 that Khan transferred to Fidelity that day, leaving a balance of $231,539.92. Eight percent of $231,539.92 equals $18,523.19 per year, or $50.75 per day, multiplied by 1265 days for the period from December 5, 2019, to May 23, 2023, totaling $64,198.75.

$196,397.51, for a total of $295,738.67. From that, the court credited the $220,624.58 that the plaintiff had loaned to the trust for a net damage award to the plaintiffs of $75,114.09.

Khan does not contest that she improperly deposited the policy proceeds into her personal account. She contends, however, that the court erred in its calculation of damages. The gist of her claim is that, although the court properly credited her for the $220,624.58 in loans that she made to the trust, the court improperly deferred the loan repayment for approximately four years, placing the trust in a substantially better position than it would be in the absence of the breach. Specifically, she contends that she had the authority to surrender the policy for its cash value pursuant to the terms of the trust.[14] She points out that the policy defines the cash surrender value as the "cash value less any policy debt"[15] and further provides that "[a]ny policy debt will be deducted from the policy proceeds."[16] Because the court found that Khan had loaned $220,624.58 to the trust, Khan argues that the cash value of the policy on the date of surrender was $156,639.55, or the equivalent of $377,264.13 less $220,624.58.[17] Khan further contends

[14] Article XIII (C) of the trust provides in relevant part that the "[trustee is] authorized to . . . surrender any policy for its cash value . . . ."

[15] Section 5.4 of the policy, titled "Cash Surrender," provides: "The Owner may surrender this policy for its cash surrender value. The cash surrender value is the cash value less any policy debt. A written surrender of all claims, satisfactory to the Company, will be required. The date of surrender will be the date of receipt at the Home Office of the written surrender. The policy will terminate and the cash surrender value will be determined as of the date of surrender. The Company may require that the policy be sent to it."

[16] Section 6.3 of the policy, titled "Policy Debt," provides in relevant part: "Policy debt consists of all outstanding loans and accrued interest. It may be paid to the Company at any time. Policy debt affects dividends under Section 4.1. Any policy debt will be deducted from the policy proceeds."

[17] Khan highlights the court's statement that "[Khan] made a series of sixty-eight monthly loans to the trust of some $3017.50 (and one loan of $6406.22) to maintain the policy and to grow its cash value. Had [Khan] not done so, the policy's cash surrender value likely would have been reduced

that, even after adding lost interest to her calculated net cash value of $156,639.55, the trust still suffered no damages as a result of her actions.[18] According to Khan, the court improperly required her to pay interest on her own loans and made the trust "more than whole" when it failed to account for the timely repayment of her loans.

Khan, however, fails to acknowledge the court's findings that she transferred the policy proceeds to her personal account, contrary to the policy surrender form, which prohibits disbursements to a trustee in his or her individual capacity. See footnote 4 of this opinion. The court stated that Khan "knowingly misrepresented to Northwestern Mutual that the bank account to which she transferred the policy proceeds was titled in the name of the trust, when she knew that she was directing the funds to her personal account." The court found that Khan did not advise the plaintiffs or the grantor that the policy had been terminated or that the policy proceeds had been invested in her personal accounts and, further, that Khan opened the trust account at Fidelity on December 5, 2019, only after being advised by the grantor's attorneys that she had improperly transferred the policy proceeds to her personal accounts.

At trial, Khan acknowledged that she had commingled the trust assets with her personal accounts.[19] She

to zero, the policy would have terminated, and the trust would have had no assets at all."

[18] Because the policy paid annual dividends in the form of interest accrual at an annual rate of 3.5 percent, Khan posits that the trust assets would have gained approximately $15,404.95 in interest had she not surrendered the policy. Khan contends that adding $15,404.95 in lost interest to her calculated net cash value of $156,639.55 demonstrates that the trust would have had $172,044.50 in cash value on December 5, 2019, had she not surrendered the policy. Because she deposited $180,866.62 into the new account, which is approximately $8000 more than the trust would have had on December 5, 2019, but for her breach, Khan argues that the trust suffered no damages.

[19] The following exchange occurred between Khan representing herself and participating as a witness in the case:

further testified that she did not know which stocks she had purchased with the money that was transferred from the trust account to her personal account.[20] In its decision, the trial court noted the "inability to determine precisely which securities were purchased with the policy proceeds and their current value . . . ." It stated that Khan had advanced her own interests to the plaintiffs' detriment, resulting in damages to the plaintiffs proximately caused by Khan's actions. See *Barash* v. *Lembo*, supra, 348 Conn. 285 ("[t]he trustee's administration of the trust must comport with her duties of loyalty and prudence").

Considering all the evidence, the court then awarded damages based on the difference between the policy proceeds on the date Khan surrendered the policy and the date Khan opened a new trust account at Fidelity,

"Q. In your—Ms. Kahn, did you commingle the money?

"A. I a hundred percent did commingle the money.

"Q. For how long, Ms. Kahn?

"A. Until I learned of my error after disclosing it to [counsel for the grantor] who then a few months later advised me that the money needed to be isolated and segregated in the Khan Family Trust."

[20] The following exchange occurred between the plaintiffs' counsel and Khan:

"Q. So, then, the money that was transferred from your individual bank account to the brokerage accounts, you don't have documentation to establish what that money was used for.

"A. I put it into my brokerage account of which I buy a set of stocks.

"Q. Okay.

"A. Always. I don't know if it was these exact stocks.

"Q. What set of stocks did you purchase with the moneys that [were] transferred from the trust account to the individual account to your brokerage accounts?

"A. I don't know exactly. [Khan's counsel] tried to come up with something that was around the same timeline.

"Q. You don't know exactly—

"A. I don't.

"Q. —what shares of stock were purchased with moneys that came from the trust. Correct?

"A. I don't. I got the money from the trust. I invested it in my account for myself and the children. In my mind I was safekeeping it, which I was."

plus prejudgment interest, and then credited the money that Khan loaned to the trust, resulting in a net damage award to the plaintiffs of $75,114.09. The court's decision reflects careful consideration of the evidence admitted at trial. On the basis of our review of the evidence, we conclude that the evidence was sufficient to support the court's damages determination and, therefore, the court's award of $75,114.09 was not clearly erroneous. Khan, therefore, cannot prevail on her claim that the court improperly found her liable for breach of fiduciary duty.

B

Khan next claims that the court acted contrary to the plain and unambiguous language of the trust in finding her liable for conduct that was not wilful. We disagree.

The following additional facts are necessary for the resolution of this claim. The third count of the plaintiffs' amended complaint alleged statutory theft.[21] The court found in favor of Khan on this count, stating in relevant part that "the plaintiffs did not prove that [Khan] had the requisite intent to deprive the plaintiffs (her own children) of the policy proceeds."[22] In light of the court's finding that Khan did not have the requisite intent to deprive the plaintiffs of the policy proceeds, Khan contends that the court's conclusion that she breached her

---

[21] "A person commits statutory theft when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." (Emphasis omitted; internal quotation marks omitted.) *Masse* v. *Perez*, 139 Conn. App. 794, 801, 58 A.3d 273 (2012), cert. denied, 308 Conn. 905, 61 A.3d 1098 (2013).

[22] The court further stated that, "[w]hile [Khan's] conduct was . . . improper and breached her fiduciary duty to the trust, it did not rise to the level of theft. The court credits [Khan's] testimony that, upon being informed of what she rather generously characterizes as a 'mistake' or 'error in judgment,' she promptly created a new brokerage account in the trust's name and transferred securities with a value of $180,866.62 from her personal brokerage accounts."

fiduciary duty was improper. In support of this claim, Khan relies on article XIII (S) of the trust, which provides in relevant part that "[n]o . . . [f]iduciary . . . shall be liable for any mistake or error in judgment, or for any action taken or omitted . . . except in the case of [wilful] misconduct."[23]

According to Khan, the plaintiffs presented no evidence demonstrating that her conduct rose to the level of wilful misconduct. Khan points to the court's finding that her monthly loans to the trust enabled the trust to grow its cash value and that, had she not done so, the cash surrender value likely would have been reduced to zero. See footnote 17 of this opinion. Khan, however, fails to acknowledge the court's additional findings, including its finding that "[Khan] acted without authorization (and without the plaintiffs' knowledge and consent) in terminating the policy, transferring the policy proceeds into her personal banking and investment accounts, commingling those funds with her personal funds, and purchasing securities in her own name (at least in part with the policy proceeds), all to the plaintiffs' detriment."

"Whether a party's conduct is wilful is a question of fact. . . . The term has many and varied definitions, with the applicable definition often turn[ing] on the specific facts of the case and the context in which it is used." (Citation omitted; internal quotation marks omitted.) *Saunders* v. *Firtel*, 293 Conn. 515, 530, 978 A.2d 487 (2009). "While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been

---

[23] Article XIII (S) of the trust provides: "No individual Fiduciary who is related to me by blood or marriage shall be liable for any mistake or error of judgment, or for any action taken or omitted, either by my Fiduciaries or by any agent or attorney employed by my Fiduciaries, or for any loss or depreciation in the value of the trust, *except in the case of willful misconduct*." (Emphasis added.)

treated as meaning the same thing. The result is that [wilful], wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Matthiessen* v. *Vanech*, 266 Conn. 822, 833, 836 A.2d 394 (2003); see also *Doe* v. *Flanigan*, 201 Conn. App. 411, 426–28, 243 A.3d 333, cert. denied, 336 Conn. 901, 242 A.3d 711 (2020).

On the basis of our review of the evidence in the record, we conclude that the court's findings support the conclusion that Khan's conduct was wilful. Khan acknowledged at trial that she transferred money from the trust account into her personal bank account even though the cash surrender form required that the trustee not be the payee in his or her individual capacity. Khan never informed Northwestern Mutual that the money was being transferred to her individually. Khan testified that the following day, she transferred approximately $377,000 of trust assets plus approximately $23,000 of her own assets to her individual brokerage accounts. Khan acknowledged that the money from the trust account was commingled with her other money until she opened a new trust account approximately fourteen months later.

On the basis of this evidence, the court found that Khan "did not advise the [plaintiffs] or the grantor that the policy had been terminated or that the policy proceeds had been invested in [Khan's] personal accounts" and that she opened a trust account at Fidelity "only after the grantor's attorneys advised her several months earlier that it was improper for [Khan] to have transferred the policy proceeds to her personal accounts." The court further stated that Khan "knowingly misrepresented to Northwestern Mutual that the bank account to which she transferred the policy's proceeds was titled in the name of the trust, when she knew that she was

directing the funds to her personal account. [Khan] then transferred those funds to her personal accounts at Fidelity." Contrary to the contention of Khan, the court's finding that Khan did not have the requisite intent to deprive the plaintiffs of the policy proceeds for purposes of the statutory theft count does not require a conclusion that Khan's conduct was not wilful. Accordingly, Khan cannot prevail on her claim that the court improperly found her liable for breach of fiduciary duty based on conduct that was not wilful.

C

Khan next claims that the court erroneously awarded punitive damages after it found that no wilful or wanton misconduct had occurred. We disagree.

Common-law punitive damages in Connecticut "serve primarily to compensate the plaintiff for his injuries" and are limited to litigation expenses less taxable costs. (Internal quotation marks omitted.) *McCarter & English, LLP* v. *Jarrow Formulas, Inc.*, 351 Conn. 186, 208, 329 A.3d 898 (2025). "[I]n . . . light of the increasing costs of litigation, punitive damages in this state can also punish and deter wrongful conduct." (Internal quotation marks omitted.) Id., 209. "In order to obtain an award of common-law punitive damages, the pleadings must allege and the evidence must be sufficient to allow the trier of fact to find that the defendant exhibited a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) *Landmark Investment Group, LLC* v. *CALCO Construction & Development Co.*, 318 Conn. 847, 878, 124 A.3d 847 (2015). Punitive damages may result from a breach of fiduciary duty. See *Chioffi* v. *Martin*, 181 Conn. App. 111, 141, 186 A.3d 15 (2018).

In support of her claim, Khan again relies on the court's finding that she did not have the requisite intent

to deprive the plaintiffs of the policy proceeds for purposes of the statutory theft count. According to Khan, the court's award of punitive damages includes a mistake of law and is inconsistent with its finding that she lacked the intent to harm. As we concluded in part I B of this opinion, however, we conclude that the court's finding that Khan did not have the requisite intent to deprive the plaintiffs of the policy proceeds for purposes of the statutory theft count does not compel a conclusion that Khan's conduct was not wilful. Further, reading the court's decision as a whole reveals that the court made numerous findings, previously set forth in this opinion, showing that Khan exhibited a reckless indifference to the rights of the plaintiffs or an intentional and wanton violation of those rights. As these findings are supported by the record, Khan cannot prevail on her claim that the court erroneously awarded punitive damages.

D

Khan next claims that the court improperly removed her as a trustee and acted contrary to the trust in establishing procedures regarding the appointment of a successor trustee. We disagree.

Khan first claims that the court improperly relied on General Statutes §§ 45a-499ww and 45a-499uu in removing her as trustee and appointing a successor trustee because, pursuant to General Statutes § 45a-487t (a) (5), those statutes do not apply to acts done prior to January 1, 2020. "To the extent that our review requires us to construe statutory provisions, this presents a legal question over which our review . . . is plenary." *Washington Mutual Bank* v. *Coughlin*, 168 Conn. App. 278, 288, 145 A.3d 408, cert. denied, 323 Conn. 939, 151 A.3d 387 (2016).

Section 45a-499ww (a) provides that "[t]he settlor of a noncharitable trust, the settlor of a charitable trust

who has expressly retained the right to do so, the Attorney General in the case of a charitable trust, a cotrustee, a beneficiary or the surety on the trustee's probate bond, may request the court to remove a trustee, or a trustee may be removed by the court on its own initiative." Pursuant to § 45a-499ww (b) (1), the court may remove a trustee if "[t]he trustee becomes incapable of executing or neglects to perform the trustee's duties, wastes the trust assets, fails to furnish an additional or substitute probate bond ordered by the court, or has committed any other serious breach of trust . . . ."

Section 45a-499uu (a) provides that "[a] vacancy in a trusteeship occurs if: (1) A person designated as trustee rejects the trusteeship; (2) a person designated as trustee cannot be identified or does not exist; (3) a trustee resigns; (4) a trustee is disqualified or removed; (5) a trustee dies; or (6) a conservator is appointed for an individual serving as trustee." Section 45a-499uu (c) provides that "[a] vacancy in a trusteeship required to be filled shall be filled in the following order of priority: (1) By a person designated in the terms of the trust to act as successor trustee or appointed according to a procedure specified in the terms and, in the case of a testamentary trust, appointed by the Probate Court; (2) in the case of a noncharitable, inter vivos trust, by a person appointed by unanimous agreement of the qualified beneficiaries; or (3) by a person appointed by the court."

Having found in favor of the plaintiffs on the first and second counts of the complaint and having found that Khan breached her fiduciary duty as trustee and committed acts that constitute a "serious breach of trust" under § 45a-499ww, the court ordered that Khan be removed as trustee upon the appointment of a successor trustee. The court next relied on article VI of the

trust regarding the appointment of a successor trustee[24] and indicated that it would conduct a hearing to determine whether the potential successor trustees named in the trust were willing and able to serve as trustee.[25]

According to Khan, the court improperly relied on §§ 45a-499ww and 45a-499uu, which were enacted in 2019 as part of the Connecticut Uniform Trust Code (code), General Statutes § 45a-499a et seq.; see Public Acts 2019, No. 19-137; in removing her as trustee. In support of her argument, Khan relies on § 45a-487t (a) (5), also enacted in 2019, which provides that "[a]n act done before January 1, 2020, is not affected by [the code]." Because the trust was established in 2007 and all conduct complained of occurred before 2020, Khan contends that the court's reliance on the code as authority to remove her as trustee was improper.

Khan, however, fails to acknowledge § 45a-487t (a) (1), which provides that the code "[*applies*] *to all trusts created before, on or after January 1, 2020*" and § 45a-487t (a) (2), which provides that the code "[*applies*] *to all judicial proceedings concerning trusts commenced on or after January 1, 2020*." (Emphasis added.) In light of the language in § 45a-487t (a) (1) and (2) indicating that the code applies to all trusts created before, on or after January 1, 2020, and all judicial proceedings

[24] Article VI (A) of the trust provides in relevant part: "My spouse, LISA C. KHAN, is the initial Trustee of any trusts under Article I. My spouse may appoint one or more successor Trustees. If my spouse ceases to act as a Trustee and fails to appoint a successor, I appoint ROBERT B. FAWBER, of West Hartford, Connecticut, as a Trustee." Article VI (E) provides in relevant part that, "[i]f [FAWBER] or any successor to such Trustee fails or ceases to act as a Trustee, the law firm of Cummings & Lockwood LLC may appoint one or more successor Trustees."

[25] On December 12, 2023, the plaintiffs filed a status update indicating that the three individuals previously identified by Khan as potential successor trustees had declined the position. Additionally, the plaintiffs indicated that they had contacted five additional attorneys about the successor trustee position and that all five had declined. To date, it does not appear that a successor trustee has been appointed.

concerning trusts commenced on or after January 1, 2020, we conclude that the court properly relied on §§ 45a-499ww and 45a-499uu in removing Khan from her position as trustee. We further conclude that Khan's claim would fail even if she were correct that the court erred in applying these provisions because the code "did not change or redefine the fiduciary duties owed by the defendant to the trust beneficiaries but merely codified the common law in this respect." *Barash* v. *Lembo*, supra, 348 Conn. 286 n.12; see also *Benjamin* v. *Corasaniti*, 341 Conn. 463, 479 n.11, 267 A.3d 108 (2021);[26] but see *Tunick* v. *Tunick*, 201 Conn. App. 512, 538 n.15, 242 A.3d 1011 (2020) (code not applicable to court's consideration of continuing duties of trustee removed prior to January 1, 2020), cert. denied, 336 Conn. 910, 244 A.3d 561 (2021).

Khan next contends that, under either the code or the common law, the court improperly removed her as trustee. She first argues that the court did not make the necessary findings for her removal pursuant to § 45a-499ww. She cites to *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 844 A.2d 836 (2004), as support for her contention that her removal was improper. In that case, our

---

[26] In *Barash* v. *Lembo*, supra, 348 Conn. 264, our Supreme Court noted the tension in § 45a-487t, stating: "The retroactive applicability of the code to any particular situation depends on the nature of the disputed issue. Relevant to the present appeal, General Statutes § 45a-487t (a) (1) provides in relevant part that the code applies to 'all trusts created before, on or after January 1, 2020.' Subsection (a) (5) of § 45a-487t, by contrast, bars retroactive application of the code to '[a]n act done before January 1, 2020 . . . .' " Id., 286 n.12. "The code did not change or redefine the fiduciary duties owed by the defendant to the trust beneficiaries but merely codified the common law in this respect. . . . Consequently, we need not address whether the code applies retroactively to the defendant's actions." (Citation omitted.) Id.

In the present case, we note that, although the parties rely on the different provisions of § 45a-487t regarding the applicability of the code, they have not otherwise briefed the retroactive application of the code to the facts of this case.

Supreme Court stated that removal of an executor "is an extraordinary remedy designed to protect against harm caused by the continuing depletion or mismanagement of an estate. . . . In the absence of continuing harm to the interests of the estate and its beneficiaries, removal is not justified merely as a punishment for a fiduciary's past misconduct." (Internal quotation marks omitted.) Id., 457.

In the present case, the court found that Khan had removed trust assets without authorization, knowingly made misrepresentations to Northwestern Mutual, commingled trust assets with her own funds and purchased securities in her own name, at least in part with the policy proceeds. Additionally, the court found that Khan opened the account at Fidelity on December 5, 2019, only after being advised by the grantor's attorneys that she had improperly transferred the policy proceeds to her personal accounts. Contrary to the contention of Khan, the court's findings regarding Khan's removal as trustee are supported by the record and support the court's conclusion that removal was necessary to prevent future harm to the trust. Khan, therefore, cannot prevail on her claim that the court improperly removed her as trustee.

Finally, Khan argues that pursuant to article VI (A) of the trust; see footnote 24 of this opinion; and article VI (F) of the trust,[27] only she had the authority to appoint, remove and replace any trustee. Article VI (A) of the trust provides in relevant part: "My spouse, LISA C. KHAN, is the initial Trustee of any trusts under Article

[27] Article VI (F) of the trust provides: "My spouse may remove any Trustee of any trust. At such time as my spouse removes a Trustee, my spouse shall appoint one or more Independent Trustees as successor to the removed Trustee; provided, however, that such successor Trustee shall be a bank, trust company, registered investment advisor, certified public accountant or attorney specializing in trusts and estates matters."

I. My spouse may appoint one or more successor Trustees. If my spouse ceases to act as a Trustee and fails to appoint a successor, I appoint ROBERT B. FAWBER, of West Hartford, Connecticut, as a Trustee." Article VI (F) of the trust provides in relevant part: "My spouse may remove any Trustee of any trust. At such time as my spouse removes a Trustee, my spouse shall appoint one or more Independent Trustees as successor to the removed Trustee . . . ."

Although we agree that these provisions granted Khan the right to appoint and remove a trustee, we disagree that she retained that right once she was removed as trustee. Pursuant to § 45a-499uu (a) (4), "[a] vacancy in a trusteeship occurs if . . . a trustee is disqualified or removed . . . ." Khan's removal as trustee, therefore, created a vacancy. Section 45a-499uu (c), previously set forth in this opinion, then provides the order in which a vacancy is to be filled, starting with a person designated in the terms of the trust to act as successor trustee, and next, in the case of a noncharitable inter vivos trust, by a person appointed by unanimous agreement of the qualified beneficiaries, and finally, by a person appointed by the court. The court, having removed Khan as trustee pending appointment of a successor trustee, properly applied the provisions of the statute and stated, pursuant to the terms of the trust, that it would conduct a hearing to determine whether Fawber, the named successor trustee, was willing and able to serve and, if not, whether Cummings & Lockwood or the court should appoint a successor trustee.

### E

Khan next claims that the court improperly ignored the plain and unambiguous language of the trust which required that she be compensated with a trustee fee.[28] We disagree.

---

[28] Article XIII (X) of the trust provides in relevant part that the fiduciaries "shall be entitled to reasonable compensation for their services."

The following additional facts are necessary for the resolution of this issue. In her posttrial memorandum of law, Khan asserted that, as a result of her "fifteen years of successful service to the trust, the court should award her a reasonable trustee fee" in accordance with her previously filed motion. In her motion requesting a reasonable trustee fee, Khan sought a trustee fee of 3 percent of the trust's average cash value of $221,000 for the years 2012 through 2022, or $6630 per year. She also sought a reduced fee of $2500 per year for the years 2007 through 2011.[29] The court denied Khan's request for a trustee fee.

"Under [Connecticut] law an executor, administrator, trustee or guardian is entitled to a reasonable compensation for his services, depending upon the circumstances of the case. . . . In *Hayward* [v. *Plant*, 98 Conn. 374, 384–85, 119 A.341 (1923)], our Supreme Court set forth nine factors for the trial court to consider when determining the reasonableness of such compensation: (1) the size of the estate; (2) the responsibilities involved; (3) the character of the work required; (4) the special problems and difficulties met in doing the work; (5) the results achieved; (6) the knowledge, skill and judgment required of and used by the [trustee]; (7) the manner and promptitude with which the estate has been settled; (8) the time and service required; and (9) any other circumstances which may appear in the case

[29] In her motion requesting a trustee fee, Khan asserted that the average value of the trust from 2012 to August 18, 2022, the date of the motion, was approximately $221,000. She contended that her work managing the trust consisted of "monitoring the cash value against premiums paid; reviewing the terms of the policy in determining if premiums should be paid in full or offset by dividends; considering the beneficiaries' insurance needs; analyzing the years it would take for the policy to be 'paid up'; weighing the value returned in the insurance policy versus the value lost in the more aggressive investments; and determining the appropriate time to surrender the policy and invest the proceeds in investments that hopefully generated a greater return."

and are relevant and material to this determination." (Citation omitted; internal quotation marks omitted.) *McGrath* v. *Gallant*, 143 Conn. App. 129, 134, 69 A.3d 968 (2013).

When determining whether the trial court used the appropriate legal standard, our review is plenary; the question of whether the trial court properly applied the factors in *Hayward* to the facts of this case and determined that the defendant was not entitled to receive compensation is reviewed under an abuse of discretion standard. Id., 135–36. In the present case, the court considered the *Hayward* factors and denied Khan's request for a trustee fee, citing her conduct as set forth in this opinion. Specifically, the court stated that "whatever benefit [Khan] provided to the trust by loaning it money to maintain the trust's assets was completely undermined by [Khan's] later conduct. . . . [Khan] is being removed as trustee because she breached her fiduciary duty to the trust; mismanaged trust assets by commingling trust assets with her personal assets; made no effort to return the trust assets to the trust until the plaintiffs demanded that she do so; and then only returned a portion of the trust assets. Second, [Khan] failed to comply with the trust's requirement to produce evidence establishing the reasonableness of her requested fees."

Because the court's factual findings in this regard are supported by the record and are not clearly erroneous, the court did not abuse its discretion in denying Khan's request for a trustee fee. Accordingly, Khan cannot prevail on her claim that the court ignored the language of the trust when denying her request for a trustee fee.

The court, therefore, properly rendered judgment in part in favor of the plaintiffs in the trust action.

## II

### THE INDEMNIFICATION ACTION

Khan claims that the court improperly failed to apply the plain and unambiguous language of the trust's indemnification clause. We disagree.

As previously set forth in this opinion, after the plaintiffs commenced the present action, Khan commenced an indemnification action against the grantor, claiming that the actions she took regarding the policy were within the scope of powers identified in the trust as "Insurance Powers," including the powers to "surrender any policy for its cash value," to "borrow money for any purpose," and "to rely on others to pay [premiums], with no obligation . . . to make such payments or take any action to keep any policy in force . . . ." Khan relied on article XIII (C) of the trust, in which the grantor agreed, "[o]n behalf of [himself] and [his] legal representatives, successors, heirs and assigns . . . [to] indemnify and hold harmless [his] Trustees from all claims, liabilities, penalties and costs, including attorney's fees, arising from any claim, demand, order or action related in any way to investing in and retaining any such insurance policies and the exercise or nonexercise of any Insurance Powers or other incidents of ownership therein." The court found in favor of the grantor and against Khan in the indemnification action, concluding, inter alia, that the grantor did not agree to indemnify Khan for the conduct at issue in the trust action, but only for claims relating to "investing in and retaining . . . insurance policies and the exercise or nonexercise of any Insurance Powers or other incidents of ownership."

On appeal, Khan contends that the word "all" in the indemnity provision providing that the grantor agreed to indemnify and hold harmless his trustees "from all

claims, liabilities, penalties and costs" should be interpreted broadly and without exception. See, e.g., *Cirrito* v. *Turner Construction Co.*, 189 Conn. 701, 704–709, 458 A.2d 678 (1983) (broadly interpreting "all" in indemnification clause of contract between general contractor and subcontractor); *Laudano* v. *General Motors Corp.*, 34 Conn. Supp. 684, 688, 388 A.2d 842 (1977) (broadly interpreting "all" in indemnification clause of contract between seller of dock shelters and buyer to "[include] a promise to indemnify even the negligent indemnitee"). We disagree and conclude that the court properly interpreted the trust and determined that the grantor did not intend to indemnify Khan for her conduct in the present case.

"The cardinal rule of construction of all trusts . . . is to find and effectuate the intent of the testator or settlor. . . . The issue of intent as it relates to the interpretation of a trust instrument . . . is to be determined by examination of the language of the trust instrument itself and not by extrinsic evidence of actual intent. . . . The construction of a trust instrument presents a question of law to be determined in the light of facts that are found by the trial court or are undisputed or indisputable. . . . [W]e cannot rewrite . . . a trust instrument. The expressed intent must control, although this is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the . . . settlor when the instrument was executed . . . ." (Citation omitted; internal quotation marks omitted.) *Spinnato* v. *Boyd*, supra, 231 Conn. App. 472.

Although Khan is correct that the grantor agreed, in the indemnification clause, to "indemnify and hold harmless [his] Trustees from all claims, liabilities, penalties and costs," this clause was limited to claims "arising from any claim, demand, order or action related in any way *to investing in and retaining any such insurance*

*policies and the exercise or nonexercise of any Insurance Powers or other incidents of ownership therein.*" (Emphasis added.) Construing the trust to effectuate the intent of the grantor, and in light of the facts found by the trial court; see *Spinnato* v. *Boyd*, supra, 231 Conn. App. 472; the court properly concluded that Khan was not entitled to indemnification under the circumstances of this case. Specifically, the court found that Khan had breached her fiduciary duty to the trust by removing trust assets without authorization, knowingly made misrepresentations to Northwestern Mutual, commingled trust assets with her own funds and purchased securities in her own name, at least in part with the policy proceeds. Such conduct does not fall within the parameters of the indemnification clause in article XIII (C) of the trust regarding claims "arising from any claim, demand, order or action related in any way to investing in and retaining any such insurance policies and the exercise or nonexercise of any Insurance Powers or other incidents of ownership therein." Khan, therefore, cannot prevail on her claim that she was entitled to indemnification pursuant to the plain and unambiguous language of the indemnification clause.

Accordingly, the trial court properly rendered judgment in favor of the grantor in the indemnification action.

The judgments are affirmed.

In this opinion the other judges concurred.